ABEDNEGO BOZE V. HENRY DAVIS' ADM'RS AND OTHERS.

A voluntary agreement to convey land will not be specifically enforced, although the donee may have been actually put in possession by the donor, and expended much labor and money in the erection of buildings and improving the land ; but the donee can recover the value of the improvements.

See this case as to what is a valuable consideration, upon which a specific performance of a promise to convey will be enforced.

In an action for specific performance, the plaintiff may, by proper allegations and and prayer, claim damages in case the specific performance be denied.

Appeal from Harrison.   The facts are stated in the Opinion.

*C. A. Frazer*, for appellant.   It is the well settled doctrine of Courts of Equity in England, and most if not all the American States, that, under proper circumstances, a parol contract for the sale of land will be enforced, and such is the law of this State.   (Garner v. Stubblefield, 5 Tex. R. 552 ; Dugan v. Colville, 8 Tex. R. 126.)

The conflict of decision on the general subject, has grown out of the application of the doctrine to particular cases, and not as to its existence as a branch of equity jurisdiction.   The difficulty is in its application, and not as to the power of the Court to decree a conveyance when a proper case is presented.

The principle is thus stated by this Court : " I apprehend " that the true principle is, that, if there has not been such a " change of circumstances, produced or growing out of the pa- " rol contract, that it would be difficult to place the vendee in " the same position that he was in before making the contract, " there would not be sufficient equity raised, to justify a decree " for a conveyance of the title.   If, however, the vendor, by a " parol contract, should permit the vendee to go into the pos- " session, bestow much labor and expense in improving the land, " in the confidence that the vendor would make the title in

" conformity with his parol promise, such circumstances would "raise an equity in favor of the vendee against his vendor, "aside from and uncontrolled by the Statute of frauds." (Dugan v. Colville, Tex. R. 128.)

The circumstances surrounding the removal of Boze from Alabama, his settlement in Texas on the land in question, and its improvement, surely are sufficient to entitle him to a decree for a conveyance. He certainly cannot be placed back in the position in which he was before the contract was made ; and it is equally certain that no rule of damages known to Courts of Law or Equity, can compensate him for the damages which he would sustain by a loss of the land. The injury would be irreparable to him. The fact that he was the father-in-law of Davis, can have no legal bearing on the question. Such as the contract was, he took possession of the land under it, made valuable improvements on the land, and performed fully his part of the contract, in the belief and confidence that Davis would perform his part of it, and with Davis' consent and encouragement. What more is wanted to give him a full and complete right to a decree? His case is fully within the principles of the case of Dugan v. Colville, before cited.

It is too late, in the history of enlightened jurisprudence, for argument or authority to be required to show that an injury, inconvenience or prejudice to the promisee, commensurate with the right surrendered with the promiser, is sufficient to sustain and render the promise obligatory. The former will be presumed by the Courts to be equal to the latter, unless the contrary is alleged and proved. The question arising on demurrer, this equality will be taken for granted. It is alleged in the petition, that Boze, at great inconvenience, expense and hardship, upon the belief that the contract would be carried out in good faith by Davis, and induced thereby, sold a comfortable home and residence in Alabama, and removed to Texas and settled on the land in question ; and shall all this be held not a sufficient consideration to support a conveyance of one hundred acres of land ? As to the sufficiency of an inconve-

nience, hardship or injury to the promisee, to support the promise, see Chitty on Contracts, page twenty-nine, and note and authorities there cited.

*P. Morrah,* for appellees.   The appellant came into Court a volunteer, not a purchaser for a valuable consideration, asking the aid of the Court to enforce an incomplete gift.   I insist upon a distinction between volunteers and purchasers for a valuable consideration, who enter, pay money and make improvements.   As liberal as Courts of Equity are becoming in cases of verbal contracts for land, in favor of the purchaser, I think this distinction has not been annihilated.   A mere gratuity in such cases will not be enforced.   See the following authorities for cases exactly in point:   Kirksey v. Kirksey, 8 Ala. R. 131 ;  8 B. Monroe, 566.

The consideration entitling a party to aid in such cases must be valuable, or at least meritorious ; and the consideration here is not even meritorious.   (Minturn v. Seymour, 4 Johns. Chan. R. 500 ; 1 Cowen, 733 ; 3 Am. Chan. Dig. p. 348, Sec. 144.)


HEMPHILL, CH. J.   This is a suit for specific performance. The petition alleges that the plaintiff, Abednego Boze, about five years since, being comfortably settled on his homestead and farm in the State of Alabama, was solicited by Henry Davis (the husband of Frances, who was a daughter of the plaintiff) to remove with his family to Texas, the said Davis offering as an inducement to said removal, to give petitioner a tract of land in fee, upon which he might settle with his family ; that Davis afterwards and often repeated said solicitation and offer, and the petitioner, though old and infirm, induced by the same, did submit to all the hardships and sacrifices of making such removal, and made the same in expectation of receiving from Davis the tract of land so offered by him ; that on the arrival of the petitioner, with his family, in January, 1851, the said Davis promptly recognized his obligation to give the said land

to the petitioner in fee, and promptly designated a tract of one hundred acres, with assurances then and often repeated, that it should be more particularly defined by metes and bounds, and a title thereto executed; that on the first of January, 1851, the petitioner commenced building, and clearing, and settled on the land with his family, and has continued to reside thereon, cultivating and improving the same; that on the 15th day of October, 1852, the said tract was, with the consent and procurement of Davis and petitioner, surveyed, the petitioner paying the expenses of survey, with the knowledge and approbation of Davis; that in March, 1853, Davis departed this life, without having made a title or signed any written memorandum of his promise to convey to petitioner; that said Davis, to the time of his death, recognized the petitioner as the owner of the said land, encouraged him to make improvements, and was always ready and willing to execute title whenever required. The petitioner prays that there may be decreed to him, all the right, title and claim which Davis had in the land, and that he be quieted in his possession and enjoyment of the same. Such of the defendants as were not minors, demurred, and their demurrer being sustained, and the plaintiff declining to amend, the petition was dismissed.

The cause has been brought up by appeal, and the only question is whether there was error in sustaining the exception to the petition.

The plaintiff, by brief, furnishes an ingenious argument to sustain the proposition, and to illustrate the principles on which it is based, that under proper circumstances, a parol contract for the sale of land will be enforced, and he refers especially to the case of Dugan v. Colville, (6 Tex. R. 126,) for an enumeration of the circumstances which would raise such an equity in the vendee, as to require a specific performance of the parol contract, on the part of the vendor. This doctrine is admitted by the defendants, as one that is well established, but they deny that it has any application to this case. They insist that there is a well recognized distinction between pur-

chasers for a valuable consideration, and volunteers or donees, where the gift or assignment is incomplete or imperfect; that Courts of Equity have never enforced, specifically, contracts for title to lands, unless they were founded upon a consideration deemed valuable in law, and that as to contracts not on a valuable consideration, Courts do not interfere to enforce them, either against the party himself or his representatives.

The defendants refer to numerous authorities in support of their position. These have been examined with some attention, and it is believed that no case can be found, in which any such voluntary promise or contract as that set forth in the petition has been enforced, or, in which Courts have consummated for a donee, a title which has been left imperfect by the parties themselves.

These doctrines are stated very clearly and fully by Judge Story in his Treatise on Equity. After stating that in his discussion respecting bills for specific performance, it has been constantly supposed that the contract was founded on a valuable consideration, he says, in effect, that in respect to voluntary contracts, Courts of Equity do not interfere to enforce them, either against the party himself or as against other volunteers claiming under him. Thus, for example, if a party should enter into a voluntary agreement to transfer stock to another, or to give him a sum of money, or to convey to him certain real estate, Courts of Equity would not assist in enforcing the agreement, or against his personal representatives; for the party contracted with is a mere volunteer. (Story, Eq. Sec. 433, 787, 793, 973, 987; 1 Fonbl. Eq. B. 1, Ch. 5, Sec. 2, n. h 3; Ellison v. Ellison, 6 Ves. 662; 18 Ves. 149; 1 Johns. Chan. 336, 337; 1 Craig & Phillips, 138, 141; 1 Mylne & Craig, 226, 237; 8 B. Monroe, 566; 8 Ala. R. 131; 2 Bouvier's Law Dic. p. 636.)

How far Courts of Equity would interfere to support or enforce the rights of volunteers, seems at one time to have been unsettled, but in the case of Ellison v. Ellison, (6 Ves. 622,) the distinction was taken between perfect and imperfect gifts,

that the former would be sustained and enforced, or rather not disturbed, by Courts of Equity, but that the latter could receive no aid, but that the parties would be left where the law found them. (1 Johns. Chan. R. 338.)

This distinction has been constantly maintained, and imperfect gifts, not completed by the parties, have not been consummated by the Courts. There may be cases of great hardship under this rule, and if the facts stated in the petition be true—and as such the demurrer admits them—the case of the plaintiff is one to which, if possible, the Courts should extend relief. He was induced by the promises of the deceased, to abandon his home, remove to a distant country, and expend his toil and labor for years on this tract of land, with the assurance that title would be extended to him, and that it would be a secure asylum to him in his old age, with its attendant infirmities. To deprive him of this land now, and of the fruits of his toil. and expenditure, is a hardship which appeals strongly to the sympathies of the heart, but to which the law, at least in the state of the pleadings in this case, does not extend any relief.

Much might also be said in favor of the policy of the law as it now exists. It is only in strong cases (where there has been part performance) that the Courts will enforce parol contracts for land, even where a valuable consideration has been paid, and it would probably open a wide door for fraud, if voluntary promises or contracts between friends, made perhaps loosely, and probably with great injustice to other friends, or to relatives equally meritorious, could be enforced.

But be the policy of the law what it may, there is no doubt of the principle, which forbids the Courts from interfering to enforce such imperfect, voluntary claims, as that of the plaintiff.

Had the plaintiff prayed for compensation for his improvements, provided specific performance was refused, there is no doubt that in Equity he would have been entitled to a decree for such compensation. Although neither Davis nor his representatives can be enforced to consummate the title to this land, yet they cannot enrich themselves at the expense of the plain-

tiff. They cannot enjoy the fruits of his labor and toil, without reasonable compensation. But as he did not pray for such relief, and as he refused to amend, we cannot remand the cause for a reference to ascertain the value of improvements, and the judgment must therefore be affirmed, and it is so ordered.

Judgment affirmed.