JOHN C. MURPHY ET AL. v. W. W. STELL ET AL.

1. PRACTICE—PLEADING.—In a suit to correct alleged errors in an account settled and closed by note, in which the petition did not contain specific allegations of error, and the defendant took no exceptions to the petition, nor excepted to evidence adduced showing errors in the account, it is too late to take advantage of the insufficiency of the petition on appeal.

Opinion of the court.

2. CONFLICT OF TESTIMONY—APPEAL.—Where there was a conflict of testimony before the jury, on appeal the appellee is entitled to the benefit of all the facts which are fairly and reasonably established by the testimony in the record tending most strongly to support the judgment.
3. See testimony held insufficient to sustain a verdict.
4. PLEADINGS—PAROL CONTRACT.—Unless it affirmatively appear that a contract was in parol, the objection that it is in violation of the statute of frauds cannot be taken by demurrer or exceptions.
5. PAROL SALE OF LANDS.—To sustain a parol gift of lands, followed by possession and large expenditure in improvements thereon by the grantee, it is necessary that the terms and conditions of such contract be clear and free from ambiguity, and that possession was taken and improvements made on the strength of it. Permissive occupation by the father, and expectation of a gift by the son, will not be sufficient to bring the case within the rule.

APPEAL from Lamar. Tried below before the Hon. R. A. Taylor. The facts are stated in the opinion.

*S. B. Maxey*, for appellants.

*W. B. Wright*, for appellee.

MOORE, ASSOCIATE JUSTICE.—This suit was brought by appellee, W. W. Stell, against appellants, to open and correct an account previously closed by note, and to enjoin and restrain the sale of three tracts of land conveyed by said Stell to Sam Bell Maxey, in trust to secure the payment of said note, and also to recover damages alleged to have been sustained by appellee through the wrongful sale by appellants of cotton delivered to them for shipment and sale as further security of appellee's indebtedness to them, on which it is averred a large loss was sustained by reason of the sale of it prior to the time it should have been put upon the market, under the stipulation and agreement entered into by appellants with appellee.

It appears from the record that appellants were merchants doing business in Paris, Lamar county, Texas, in the years 1866 and 1867. The appellee, who was planting

cotton in said county during said time, was furnished by them with supplies to carry on his business.   On the 29th of June, 1867, appellee executed in favor of appellants, to J. T. Gaines, trustee, a deed of trust on his growing crop of cotton, corn, &c., also including his horses, mules, oxen, wagons, and farming utensils, to secure the sum of $1,635.-94, acknowledged to have been already advanced him by appellants, and to secure payment for such goods and money, to be thereafter advanced, as he might need, and as might be agreed on between them, to aid in carrying on his business for the year.

It further appears that appellee, by said deed, agreed to deliver his entire crop of cotton to appellants without delay, after its maturity, (allowing a reasonable time for gathering, ginning, and baling.)   And it was also expressly stipulated in said deed that the advances made by appellants should be and remain a lien on appellee's entire crop until the cotton should be sold, when the net proceeds should be applied to the payment of appellants' demand; and if the cotton proved insufficient to pay his debt, and it was not otherwise settled by the first of March, 1868, said deed might be enforced by the sale of said horses, mules, and other property.

By a subsequent agreement between the parties the mules and wagons were sent off and sold for the benefit of appellee Stell and in pursuance of an understanding then had, appellee, on the 22d of February, 1868, executed to appellant, Campbell, his note for the sum of five thousand eight hundred and six dollars and twenty cents, due on or before the first day of January, 1869, bearing interest at the rate of ten per cent. from date until paid.   And to secure its payment appellee Stell, joined by his wife, executed to Sam Bell Maxey the deed of trust on three tracts of land, for the cancellation of which this suit was, in part, brought. This note was given by Stell, as insisted by appellants, for the balance due on his account, but was executed, as appel-

lee Stell maintains, with the understanding that all errors in the account should be corrected, and credit allowed him therefor on a subsequent account. There is in said note the following stipulation : "The net proceeds arising from the sale of forty-seven bags of cotton, now in the hands of Murphy & Co. for shipment, when realized, are to be entered as a credit on this note."

It is alleged by appellee Stell that in consideration of the execution of this deed appellant Campbell promised and agreed that said cotton should not be sold before the 1st of April, 1868. It is not averred, however, that this stipulation was omitted by either accident or mistake or through fraud in the preparation and execution of said note and deed of trust, though there are general and sweeping charges of fraud made against appellants in respect thereto.

It further appears that during the progress of the suit the injunction originally granted on the application of said Stell to restrain the sale by said Maxey under said trust deed of the land therein described having been dissolved, Maxey proceeded to sell the same, as stipulated in said deed, and said Campbell became the purchaser thereof. And said Campbell in an amended answer alleged that he became thereby the owner of said lands, and prayed he might have judgment against said Stell for title and possession of them. To which answer said Stell, in response, alleged that he did not then and at no time had he ever had any title in his own right to said lands; that the same belonged, previous to the commencement of the suit, to his father, by whom they had been subsequently conveyed to him in trust for his (appellee Stell's) minor children, for the better protection of whose interest he prayed the court to appoint a guardian *ad litem.* Whereupon the court appointed a guardian *ad litem* for said minors as asked. And said guardian appeared, and in answer to appellants' claim of said lands alleged the same to be the property of said minors.

In reply to these allegations of appellee Stell and of said guardian *ad litem*, appellants, by further amendment to their answers, averred that appellee was at and previous to the time of the execution of said deed of trust the true and *bona fide* owner of said lands, under and by virtue of a parol gift from his father, under which he had gone into possession of them, and on the faith and in consideration thereof he had, with the knowledge and approbation of his father, made large and valuable improvements upon them; that a large amount of money advanced him by appellant had been expended in permanent improvement on said land by appellee with the knowledge of his father; and that said deed of gift by his father to said minor children was made at the instance and by the procurement of appellee for the purpose of defrauding appellants.

With this brief and imperfect summary, by way of general outline of the case as presented in the court below, we will proceed to the consideration of such of the legal questions presented by the record as will suffice for its disposition.

Appellants complain that appellee Stell could not go into the entire account, for the purpose of showing errors therein, after it had been settled and closed by note, without any specific errors in the account having been pointed out in the petition; and that there was no such direct and specific averments of mistake in the account, or fraud in the preparation and execution of the note and deeds of trust by which the settlement of the account and agreement between the parties concerning said cotton was consummated, as authorized the admission of parol evidence to show that the items of the account had not been finally passed upon and adjusted, or to show that appellants had agreed to withhold said cotton from sale until the 1st of April, as insisted by said Stell. To this it is sufficient to say that no exceptions of this character were taken to the petition. Nor was any objection made to the evidence in-

troduced on the trial of the case in support of appellee's action as alleged and set up in his original and amended petition. No complaint of this kind appears to have been suggested to the court until after the case had gone to the jury. Evidently then, if the result fully and fairly reached the merits of the case, and the ends of justice had been attained, although by an irregular and erroneous course of procedure, appellants could not be now heard to complain.

To determine whether the judgment should be reversed it is only necessary to ascertain whether the verdict is supported by the evidence, or whether the charge of the court was calculated to do appellants any injury. As essential to the proper determination of these questions, it is important to ascertain, first, the amount of deductions which appellee is entitled to claim on the account for which his note was given; second, for what amount was appellants liable to him on the cotton placed in their hands for shipment and sale.

As there is a manifest and palpable conflict in the testimony bearing on these points, in determining whether such injustice has been done to appellants by the verdict as will warrant a reversal of the judgment, appellee is certainly entitled to the benefit of all the facts which are fairly and reasonably established by the testimony in the record tending most strongly to support the judgment. Considering the matter from this stand-point, it must be conceded that there was an error of $197.77 in the account, over and above those allowed by appellants, for which appellee should have had credit, as shown by the testimony of the accountant to whom, at his instance, it was referred for examination. If, in addition thereto, appellee is credited with the items he points out as erroneous in his testimony, he would be entitled to a further credit of one or two hundred dollars more. In no view of the evidence, however, can we see that he can claim credit for errors and overcharges in the account of exceeding five hundred dollars. This leaves

him indebted to appellants, when the note was given, for at least the amount of five thousand three hundred and six dollars and twenty cents. If the verdict is correct, the proceeds of the cotton delivered to appellants should have been sufficient to have discharged the entire amount of this indebtedness, and leave in the hands of appellants a balance of sixteen hundred and thirty-three dollars and eighty cents.

But let us see how much appellee may claim should be allowed him for the cotton on the most favorable view which may be taken of the evidence for him. His testimony tends to show that forty-nine bales of cotton were delivered to appellants, which weighed at the gin before they were delivered, as the witness who weighed them thought, an average of five hundred and twenty-five pounds per bale. The written evidence shows that there was only forty-seven bales delivered to appellants. And the account of sales, which was in no way impeached, shows that their total weight was only twenty-three thousand one hundred and fifty-nine pounds. Unquestionably, in the absence of any proof of fraud or want of diligence in the selection of factors to whom the cotton was consigned for sale, appellants were not chargeable for the loss in weight of the cotton. Add, then, the two other bales claimed by appellee, and allow the weight at the gin, and we have, as the total weight of the cotton for which appellants could under any circumstances be held to account, twenty-four thousand two hundred and nine pounds, which appellee says in his testimony should have brought thirty cents a pound if sold at the time stipulated by appellants. Allow this amount, and the gross proceeds from the sale of all the cotton he claims to have delivered appellants would be seven thousand two hundred and sixty-two dollars and seventy cents. There can be no pretence, however, though the court seems to have instructed the jury to the contrary, that appellants were chargeable with the gross amount for which the cot-

9

ton could have been sold at the place where, by the understanding between the parties, it was to be shipped and sold.

There are no data in the record from which we can ascertain what the cotton would have netted if sold for this gross amount. Evidently the charges and expenses upon it would have been increased by the delay in its sale and the increase of the amount upon which commissions would have been charged. Appellee cannot, therefore, complain if, from the gross amount for which he claims the cotton would have sold, we deduct the expenses and charges upon it as shown by the account sales, which, as we have previously said, were in no way impeached. These, in the aggregate, amount to fifteen hundred and fourteen dollars and nineteen cents, which, deducted from gross amount for which the cotton should have been sold, leave a balance of five thousand six hundred and twenty-eight dollars and ninety cents. Taking from this five thousand three hundred and six dollars and twenty cents, the amount of appellee's account, after allowing all deductions to which he has shown any claim, we have a balance due him of only three hundred and twenty-two dollars and seventy cents, instead of sixteen hundred and thirty-three dollars and eighty cents, as found by the jury. In reaching this result we give no consideration to the testimony of appellants, and take no note of the fact that, by the deed of June, 1868, appellants certainly were authorized to sell the cotton prior to April 1st, 1868, and that appellee is now urging that he had no title to the land embraced in the deed of February 22, 1868, in consideration of which. alone he claims appellants bound themselves not to sell the cotton prior to that time.

This excess in the verdict in favor of appellee, under the most favorable view of the testimony for him, was evidently induced by the charge of the court. The jury were instructed, " if they believed from the testimony that the defendants had any cotton of plaintiffs, and that

defendants had agreed to hold the cotton until the 1st of April, 1868, and sell the same in New Orleans, you will ascertain the amount of cotton, and the value thereof in New Orleans on said 1st of April, and find that amount for plaintiff." The jury unquestionably understood this instruction that appellee was entitled to the gross value of the cotton at the time they believed it was to have been sold, instead of its net value. If we strike out the item of expenses on shipment and sale of the cotton which we have allowed, the difference in favor of appellee from that found by the verdict will be accounted for by the broad margin of credits we have allowed as total of the items objected to in his evidence, and such as were given by the jury, or possibly in some of these items and the claim for the two extra bales of cotton.

These facts of the case, as we have considered them, are contradicted in almost every particular by the evidence of appellants, and if, on another trial, the jury should decide in favor of appellants' version of the matter, the proceeds of the cotton will be found insufficient to discharge their debt; in which event it will be necessary for the court to determine whether appellee and his wife conveyed any title or interest in the land described in their deed to Maxey.

The title by which appellee Stell acquired the land, if he had a title, was under and by virtue of a parol gift from his father, and by reason of his permanent and valuable improvements made upon it on faith of such gift. In the case of Boze *v.* Davis, (14 Tex., 331,) the court held that a voluntary agreement to convey land could not be specifically enforced, although the donee may have been actually put in possession by the donor, and expended much money and labor in the erection of buildings and improvements upon it. Subsequently to this decision, the case of Hendricks *v.* Snediker, (30 Tex., 296,) in which title was claimed in the court below through a parol gift,

on faith of which it was alleged possession had been held for a long time and considerable improvements made, being before the court, and it being quite evident the case had been decided in the District Court on the authority of the case of Boze *v.* Davis, and the court, believing the judgment, aside from the ruling in that case, should be reversed, deemed it proper to comment to some extent on the views expressed in that case. And while the court fully admitted the general principle uniformly sustained by all courts, that a mere voluntary defective conveyance, which cannot operate at law, will not be helped in favor of a volunteer in equity where there is no consideration nor any accident or fraud on which to ask relief, still, it felt constrained to express much doubt as to the applicability of this general principle to the facts in the case of Boze *v.* Davis, and in support of this doubt reviewed to some extent the cases cited in its support. Evidently the court had no intention of determining whether the case then before the court, when tried upon its merits, would come within what the court inclined to regard as the correct rule or not, but left that for determination on a full development of the facts on another trial.

On the subsequent hearing of the case in the District Court, the court seems to have held that the facts were sufficient, under the views expressed by this court in its last opinion, to support the donee's title. And it was again brought to this court, (Curlin, Adm'r, *v.* Hendricks, 35 Tex., 225,) when the opinion delivered on the first appeal was attacked by counsel with much zeal and warmth, if not some degree of asperity.

It is insisted, among other things, that the court had wholly mistaken the ground on which the case of Boze *v.* Davis was decided. That its decision was not placed by the court upon the ground of want of consideration, or that a court of equity would not aid a mere volunteer, but because the agreement to give the land was not proved

by an instrument in writing. Neither the opinion of the court, nor statement of the case in the briefs of counsel, or by the reporter, sustain this assumption. It does not definitely appear whether the alleged promise to give the land for which the suit was brought was by parol or in writing. The fact of the donor being a citizen of Texas, while the donee lived in Alabama, when the gift was first proposed, might induce the inference that it was communicated by letter. It was argued, it is true, that as courts of equity would decree specific performance of parol sales when valuable improvements had been made upon the land, this should be regarded as sufficient consideration for a decree in favor of the gift. But no allusion is made in the opinion to the statute of frauds, and the authorities referred to, as well as the principles discussed, show that the matter, in the minds of the court, was, whether the agreement for the gift could be enforced in a court of equity, without proof of some other consideration than that alleged in the petition, and had no reference to the character of the proof by which the proposed gift was to be established. Indeed, as the case was before the court on a demurrer to the petition, for the court to have placed its decision on this ground would have been in conflict with the recognized rule of pleading, that unless it affirmatively appears that the contract or agreement set up is in parol, the objection that it is in violation of the statute of frauds cannot be made by demurrer or exception.

Our purpose, however, is not to answer the strictures of counsel on the previous opinion of this court, but to correct an error into which the argument of the counsel probably assisted to lead the court. The court, in its opinion, fully concurs in the views previously expressed in respect to the case of Boze *v.* Davis. But it also says: "We have been unable to find any adjudged case where a mere voluntary promise to convey real estate has been specifically enforced by the courts." And while it ad-

mitted that a defective conveyance or parol gift may be enforced in favor of a volunteer, if supported by a sufficient consideration, and that such a promise or contract does not necessarily require a pecuniary or full and adequate consideration to support it, but is sufficient if the promising party is to receive some benefit or the other party is to sustain some detriment, still it is evidently supposed that expenditures for valuable improvements induced by the promise to give will not warrant a decree. For while the court say the language of the Supreme Court of the United States, in the case of Neale *v.* Neales, 9 Wall., 8, is direct and unambiguous to this effect, this is, says the court, a mere *dictum,* and that no case has been found to support it. We confess we cannot agree in the disparaging comment upon the authority of this case. We regard the principle announced in the opinion of this preeminent court as applicable to and warranted by the facts before it. Its correctness, however, can be easily vindicated by the authority of other courts, if this is necessary.

In the case of Kurtz *v.* Hebner, 25 Ill., 521, the promise being in parol, the court says: "A court of equity will always enforce a promise upon which reliance is placed and which induces the expenditure of labor and money in the improvement of land. Such a promise rests upon a valuable consideration. The promise acts upon the faith of the promise. We can perceive no important distinction between such a promise and a sale. Courts would sanction wrong and fraud not to sustain such a promise."

In Syler *v.* Eckhart, 1 Binn., 378, Tilghman, C. J., says: "Although courts are not disposed to extend the principle on which parol agreements concerning land have been confirmed further than they have already been carried, yet they are bound by what has been decided. It has been settled that where a parol agreement is clearly proved, in consequence of which one of the parties has taken possession and made valuable improvements, such agreement

shall be carried into effect. We see no material difference between a sale and a gift, because it certainly would be fraudulent conduct in a parent to make a gift which he knew to be void, and thus to entice his child into great expenditures of money and labor of which he meant to reap the benefit himself." (Bright *v.* Bright, 41 Ill., 97; 1 Lead. Case in Eq., American notes to Lester *v.* Forecraft, 625.)

The party setting up such promise must be able to establish it by full, clear, and satisfactory evidence. Its terms and conditions must be clear and free from all ambiguity and doubt. It must also appear that possession has been taken, and the improvement made upon the faith of it. Permissive occupation by the father and mere expectation of a gift by the son will not bring the case within the rule.

We do not intend to be understood as intimating any opinion whatever on the sufficiency of the evidence on this or the other branches of the case. Our purpose is merely to indicate our views of the law upon such questions as may probably be presented for the action of the court on another trial.

The judgment is reversed and the cause remanded.

REVERSED AND REMANDED.