### HIGHTOWER v. PRUITT et al.
### No. 2631.

Court of Civil Appeals of Texas.
Beaumont.
Dec. 31, 1934.

Rehearing Denied Jan. 9, 1935.

F. S. Jones, of Beaumont, for appellant.
E. L. Nall, of Beaumont, for appellees.

O'QUINN, Justice.

Appellee Zellee Pruitt, joined by her husband, A. C. Pruitt, brought this suit in trespass to try title against appellant Virginia Hightower, and Helen Newton and her husband, S. Y. Newton, to recover a tract of one acre of land situated in Jefferson county. Appellant Virginia Hightower answered by general demurrer, special exceptions, general denial, plea of not guilty, and specially that she was a niece of Line Pruitt, deceased, a former wife of A. C. Pruitt; that when she was about one year old, her mother died in 1889, and said Line Pruitt and A. C. Pruitt took her and that she lived with them until Line Pruitt died; that during the time she so lived with her said aunt and husband, from the time she was old enough to work, she did work and earn money and gave said earnings to said Line and A. C. Pruitt for a period of some thirty years, the amount of said earnings she could not say; that said Line Pruitt and A. C. Pruitt used said earnings to pay on the purchase price of the property in controversy and in discharging a lien thereon; that as an inducement to her to give her said earnings to said Line and A. C. Pruitt to assist in paying for said property and discharging a lien thereon, said Line Pruitt and A. C. Pruitt did promise to give, and did give, said property to her and did put her in possession of same; that thereafter she continued to carry out her undertaking with them and did care for them when they became sick and infirm, upon the reliance that said property had been given to her; that she cared for said Line Pruitt, her said aunt, until she died July 5, 1930, and that she cared for A. C. Pruitt until he abandoned the property in 1931; and that she still had possession of said property.

She further specially answered that on August 25, 1917, said A. C. Pruitt and Line Pruitt executed to the Turnbow Lumber Company a materialman's lien on said property in the sum of $225 for material with which to permanently improve said property, repairing the roof, and making general repairs; that the money used in paying off said lien was out of her earnings, the said A. C. Pruitt at all times acknowledging that she was investing her said earnings in valuable and permanent improvements on said premises, and at no time until the year 1931 did said A. C. Pruitt attempt to revoke his parol gift of said property to her; that while she was in possession of said property by virtue of said parol gift, in addition to other valuable im-

provements before alleged, and since the death of said Line Pruitt in 1931, she expended various sums of money for valuable improvements on said premises (itemizing same to the amount of $44) in addition to paying taxes in the sum of $48.80.

She further answered that the property in question was the community property of A. C. Pruitt and his wife, Line Pruitt, and that Line Pruitt many times before her death stated that in consideration of the love and affection and care given to her and A. C. Pruitt by her, and in consideration of the fact that she had invested her earnings in helping to discharge the lien against the property and in making improvements thereon, she had given her half interest in said property to said defendant; that she was living with said Line Pruitt and A. C. Pruitt at the time said Line Pruitt made such statements, and that she was holding possession of the property by virtue of and with the consent of said A. C. Pruitt; and that the purported sale of the land in controversy by A. C. Pruitt to Zellee Pruitt in 1931 was void in that said A. C. Pruitt had no title to convey to said property because he had prior thereto by parol given said property to her, and by his said acts and statements was estopped to deny her right and title to same, and prayed that she be quieted in her title to the property.

The defendants Helen Newton and S. Y. Newton disclaimed any interest in or to the property in question.

By supplemental petition the plaintiffs demurred to the sufficiency of defendant Virginia Hightower's answer, specially excepted to the various matters of defense alleged by defendant, denied all and singular the allegations of right or title alleged by defendant, pleaded the statute of frauds against the alleged parol gift of the land, and specially replied that Line Pruitt was in the possession of the premises until the time of her death, and that A. C. Pruitt, after the death of his wife, Line Pruitt, remained in possession of said premises until he was forcibly ejected therefrom by the defendant Virginia Hightower; that after the death of his wife, Line Pruitt, he exercised all ownership and control of and over said property until the time of his conveying same to Zellee Pruitt; and that since said conveyance he has exercised and attempted to exercise control over same as much as he was permitted by defendant Virginia Hightower, who forcibly ejected him from and took possession of said premises.

He further answered that he had not at any time given his part of the property to Virginia Hightower, nor had his wife, Line Pruitt, with his knowledge or consent given same to the defendant. That he and his wife, Line Pruitt, had no child and that they took said Virginia Hightower and raised her, providing her with food and clothing and educated her, giving her all the advantages of life that they could in their humble circumstances. That said defendant never furnished them any food or clothing so far as to them known, but if so it was but to repay the care and expense of them in rearing her and furnishing her with a home. That if defendant expended any money on said property it was to pay for rent during the time she occupied same. That the rental value of the property during the time defendant occupied it exceeded the value of the improvements placed thereon by her.

The case was tried to a jury upon special issues, in answer to which the jury found:

(a) That A. C. Pruitt made a present gift of the property to defendant Virginia Hightower.

(b) That A. C. Pruitt placed her in exclusive possession of the property.

(c) That defendant Virginia Hightower made valuable and permanent improvements upon the property.

(d) That in making valuable improvements upon the property she relied upon the said parol gift of the premises to her by A. C. Pruitt.

(e) That A. C. Pruitt knew that she had made valuable and permanent improvements on the premises.

And in answer to special issues requested by appellees:

(f) That A. C. Pruitt gave the land to the defendant in the year 1930.

(g) That A. C. Pruitt had not been in continuous possession of the property since the date of said gift to the defendant.

(h) That A. C. Pruitt had not been in continuous possession of the vacant portion of the property since the date of said gift.

(i) That the value of the improvements placed on the property by Virginia Hightower was $300.

(j) That the improvements made on the property by defendant Virginia Hightower were made from "1917 to date."

Appellees, plaintiffs below, filed motion for judgment non obstante veredicto. Appellant,

defendant below, filed motion for judgment on the verdict of the jury. The court granted appellees' motion and rendered judgment for them non obstante veredicto. Motion for a new trial was overruled and the case is before us on appeal.

We overrule appellant's contention that appellees were estopped from urging a judgment non obstante veredicto in their favor because they requested the submission of said special issues, the answers to which are shown in subparagraphs (f), (g), (h), (i), and (j), supra, because article 2190, R. S., as amended by Acts 1931, c. 78, § 1 (Vernon's Ann. Civ. St. art. 2190), authorizes such action.

Error is assigned, and it is insisted that the court erred in rendering judgment for appellees because the findings of the jury entitled appellant to judgment. If the evidence supports the findings, judgment should have been for appellant; but if the evidence does not support the findings, in other words, if an instructed verdict would have been proper, then the court was authorized to render the judgment.

Article 2211, R. S. 1925, as amended by Acts 1931, c. 77, § 1 (Vernon's Ann. Civ. St. art. 2211), in so far as applicable to the instant case, provides: "The judgments of the Court shall conform to the pleadings, the nature of the case proved and the verdict, if any, and shall be so framed as to give, the party all the relief to which he may be entitled either in law or equity. Provided, that upon motion and reasonable notice the Court may render judgment non obstante veredicto if a directed verdict would have been proper, and provided further that the court may, upon like motion and notice, disregard any Special Issue Jury Finding that has no support in the evidence."

A. C. Pruitt and Line Pruitt were husband and wife. The exact date of their marriage is not shown. They had no children. Appellant, Virginia Hightower, was a niece of Line Pruitt—her sister's child. Appellant's mother died in 1889 when appellant was about one year old. A. C. Pruitt and Line Pruitt took appellant and raised her. April 10, 1895, A. C. Pruitt bought the acre of land in controversy from G. W. Cox and wife for a full cash consideration. The deed was immediately placed of record. Line Pruitt died in 1930. A. C. Pruitt continued to live on the property until he married Zellee Pruitt in 1931. May 5, 1931, he conveyed the property to his wife, Zellee Pruitt, for a consideration of $1 cash and love and affection. This deed

was duly placed of record. A. C. Pruitt testified that he bought the land from Cox and paid for it in 1893 and that he built a house on the land, but that he did not get his deed until in 1895; that Cox was sick, confined to his bed for about a year and a half, and he did not bother Cox about the deed. That he paid for the land and for the house he built with money he received from his grandmother's estate. That he married Line Pruitt after he bought the land. He was occupying the house at the time Line Pruitt died, and at the time he married Zellee Pruitt. The acre of land is rectangular in shape—about four times as long as wide. There are two houses on the lot or acre; the home place, or larger house, on the front end, and a small three-room house on the back. There is an open space between the two houses used by Pruitt for garden purposes. The home place, or large house, is cut off from the open or garden space and the small house by a fence. A. C. Pruitt has at all times used the open garden space and rented the small house exercising exclusive control of and over same. After marrying Zellee Pruitt, A. C. Pruitt left the home place, but contends he had to—was ousted by appellant. This lawsuit grew out of that situation.

Appellant claims title to the acre of land, the whole of the premises, by virtue of a parol gift from A. C. Pruitt and Line Pruitt. She contends that A. C. Pruitt and his wife, Line Pruitt, by parol gave her the property and that she took possession under the gift and has since resided upon same and made valuable and permanent improvements thereon believing that she was the owner of the property by virtue of said gift and possession, relying upon said gift, and that her possession was with the consent of A. C. Pruitt, and said improvements made by her with his knowledge of her claim to the property.

A. C. Pruitt denied that he ever gave appellant the property or that he promised to do so. He says that the possession of the property by appellant was only to the extent that she for many years lived in the house with him and his wife while they supported, educated, and took care of her; that her possession at no time was exclusive, but at all times in subordination to his right of possession and ownership, she merely living in the house with them. He also denied that appellant ever made any valuable or permanent improvements upon the property, and that the value of any improvements she may have made was much less than the rental value of the property during the time she lived

on same after the death of his wife, Line Pruitt, and after she ousted him from the property in 1931.

The jury found that appellant "from 1917 to date" made improvements to the value of $300. This finding is not supported by the evidence. The jury found that A. C. Pruitt gave the land to appellant in 1930. Appellant testified to spending about $40 for repairs to the house, and that she paid $48.80 for one year's taxes. It does not appear what, if anything, she paid for improvements prior to 1930. She testified that she worked and gave her earnings to A. C. Pruitt to assist in discharging a lien executed in 1917 on the premises in the sum of $225, but to what extent is not shown, but if same had in fact occurred, and if the amount was shown with certainty, it would not avail appellant in her claim of gift of the property for the jury found that the gift was not made until 1930. So that whatever, if any amount, she contributed towards discharging a lien on the premises prior to 1930, was not contributed or spent by reason of and in reliance upon a gift which had not then been made.

We do not believe that the evidence adduced by appellant shows a gift in præsenti of the property to her by A. C. Pruitt. Among other things, she testified:

"Q. Now did they ever tell—say anything to you about the property, what they were going to do with it? ·A. They always told me that I oughtn't to mind doing nothing to help them out because it was mine.

"Q. They always said it was yours? A. Yes, sir.

"Q. Did that man, A. C. Pruitt, ever tell you that? A. Why sure.

"Q. When they told you it was your property you kept on working? A. Sure, just like any child would do. I was glad to help them.

"Q. Did A. C. Pruitt ever get where he wasn't able to work? A. Yes, sir.

"Q. Who took care of him? A. Me and my daughter.

"Q. Did you help to contribute to his support? A. I sure did.

"Q. I will ask you to state this with reference to the ownership, if you were putting your money on that property, what, if anything, did he ever say to you in regards to the ownership? A. He said: 'Take care of the property—go ahead with it because it was mine.'

"Q. Did he ever tell you at any time that it didn't belong to you? A. No. sir.

"Q. I will ask you to state whether or not he knew you were putting that money in the property? A. He always told me that I should help him, because you are doing it for yourself.

"Q. Do you remember the night he left home? A. Yes, sir.

"Q. What did he say that night when he left home with reference to the ownership of the property, if anything? A. He come there and got a mattress and a pair of springs and took them out on the porch. He told me, he said 'I want a mattress and a pair of springs, that is all I want.' I said 'all right.' I helped him carry them out on the porch while he was there. After he got the springs and mattress on the porch we come back in the house and set down and he started talking to me. While we were talking George Moran—Mr. Moran, come in and was teasing him about waiting until that time of the night to move, and he said 'Yes, he must be ashamed for anyone to see him move.' I said 'we hate to see papa move, he is getting old,' and he said 'I do kinder feel bad about it, but I was just giving the girls some good advice. I am telling them that I don't want nothing but a pair of springs and a mattress, I'm going to marry a woman that has got enough for both of us, and I'm leaving this home for them, but if they let the taxes and the white folks take it away from them that is their business.' "

On cross-examination, with reference to the gift of the property, she testified:

"Q. You have talked to Pruitt recently haven't you Virginia? A. We always talk. We stand and talk like we always have.

"Q. You wanted him to come back home and live? A. I have asked him to come back.

"Q. Numbers of times? A. Yes, sir.

"Q. He was to give you this property when he died? A. Yes, sir, he was to give me the home place.

"Q. And up until he died it was to be his? A. He said when he left home he was leaving it with us.

"Q. I know, but he was to have the right to come back and live there while he was living? A. Yes, if he wanted to.

"Q. Any time he wanted to? A. Yes, sir.

"Q. That was your agreement? A. Yes, sir.

"Q. And you never attempted to keep him from coming back if he wanted to? A. No, sir.

"Q. But when he died you expected to get the property? A. Yes, sir.

"Q. During all the time who had charge of the little house? A. Papa had charge of it until mama died.

"Q. He had charge at the time. He had charge all the time. Nobody interfered with it except the short time you lived in it? A. No, sir.

"Q. What did he use it for? A. Rent house.

"Q. And you had nothing to do with the little house, or the property? A. No, sir.

"Q. And during the time you lived in the big house, Pruitt and his wife, until she died, they also lived in the big house? A. Yes, sir.

"Q. Line Pruitt told you during all the time that when she died she wanted you to have her part of the property? A. Yes, sir.

"Q. And A. C. Pruitt, he told you the same thing? A. Yes, sir."

Ed Curtis, witness for appellant, testified that he had personally known the Pruitts and appellant for many years; that he saw and talked with them frequently. Relative to the giving of the property to appellant, he testified:

"Q. Now as this girl come up did you ever talk with him (A. C. Pruitt) about the disposition of this property? A. Well, he claimed that he distributed that—that he wanted that to come into the possession of them. He said that he wanted them to come into possession of it.

"Q. Do you remember the time he left home with reference to after he got married to Zellee Hall, did you have any conversation with him about that after he was married? A. Yes, sir.

"Q. What did he say about this property when he left? A. Well, he said that he had given it over to the children.

"Q. He had given it over to the children? A. Yes, sir, and if they didn't take care of it it was their own fault."

After further questioning, he was asked:

"Q. I am trying to get you to tell me what he told you—I am asking you what he told you? A. He told me that the property that they had was preserved for them children.

"Q. And was to go to those children after the death of him and his wife? A. He didn't tell me that.

"Q. All he said it was preserved for those children? A. Yes, sir.

"Q. That is all that he told you? A. That he wanted them to have it.

"Q. And it was preserved for them? A. Yes, sir.

"Q. He told you he was preserving that for Virginia? A. Yes, sir.

"Q. He wanted her to have it? A. Yes, sir.

"Q. He has told you that for the last fifteen or twenty years? A. Yes, sir.

"Q. In fact ever since you have known him he told you that he was preserving that property for Virginia, is that right? A. Yes, sir.

"Q. And wanted her to have it? A. Yes, sir.

"Q. And he was still using and occupying the property? A. Yes, sir.

"Q. And he told you after his wife died that he was still preserving the property for Virginia? A. Sure did.

"Q. And you thought from your conversation with him that he was going to continue to live there? A. Yes, sir.

"Q. As long as he lived? A. Yes, sir.

"Q. He never told you anything to the contrary? A. No, sir."

Helen Newton, daughter of appellant, testified that while she was living in the home of her grandmother, Line Pruitt, she heard her grandmother say that she wanted her part of the property "to go to my mother." Also that she heard A. C. Pruitt say that he wanted the property "to go to my mother." She testified that A. C. Pruitt left the home shortly after he married Zellee Pruitt, and that the night he left he took a pair of springs and a mattress and said: "I am giving—I am leaving this house for you children, don't let the taxes and that mortgage take it up, if you do that is your fault, if you do that is your business." That he said: "I have plenty because I married a woman with plenty and I don't need anything else." On cross-examination she testified that her grandfather and grandmother raised her; that she had lived with them all her life. She further testified:

"Q. Isn't it a fact that A. C. Pruitt wanted you and your mother to have this property when he died? A. That is what he said.

"Q. He wanted you and your mother to have it? A. Yes, sir.

"Q. Both of you? A. Yes, sir.

"Q. He always told you so? A. He sure did."

█ We have set out all the evidence that we think has any legal bearing upon the question of gift of the property by A. C. Pruitt to appellant. As before stated, we do not be-

lieve it sufficient to show a gift in præsenti of the property by A. C. Pruitt to appellant. The testimony of appellant herself is that Pruitt promised or said that she would get the property at his death; that that was the understanding; that she expected to get the property at his death. That was not a present giving, but if his statements could be construed as a gift it was not intended to take effect until his death, and so did not invest appellant with any present ownership of the property. In order to sustain a parol gift of land, it must be clearly shown that the gift was made and that the donee took possession under the gift and made valuable improvements on the property on the faith of it. Wootters v. Hale, 83 Tex. 567, 19 S. W. 134; Wooldridge v. Hancock, 70 Tex. 18, 6 S. W. 818; Martin v. Martin (Tex. Civ. App.) 207 S. W. 188 (writ refused); Trawick v. Buckner Orphans' Home (Tex. Civ. App.) 45 S. W.(2d) 241; West Texas Const. Co. v. Adams (Tex. Civ. App.) 54 S.W.(2d) 547. If in the instant case, as testified by appellant, Pruitt made a verbal gift of the land to her to take effect at his death, and he retained the right to control and have possession of the premises during his lifetime, no title was acquired thereunder, regardless of any improvements she may have made on the land, for it is essential, in case of parol gift of land, that possession should accompany or follow the gift; and there being no intention on the part of Pruitt to part with the title during his lifetime, there could be no exclusive adverse possession as against him, which, to pass the title and make effective the gift of the land, was necessary. Wooldridge v. Hancock, 70 Tex. 18, 6 S. W. 818.

Appellant claimed the whole of the premises by virtue of the asserted gift. As before stated, the acre of land is rectangular in shape, about four times as long as wide. There are two houses on the lot or acre. The home place, or larger house, on the front end, and a small three-room house on the back with an open space between them used for garden purposes. The home place, or larger house, is cut off from the open or garden space and the small house by a fence. The jury found that A. C. Pruitt had not been in continuous possession of this portion of the premises since the date of the said gift. This finding is not supported by the record. The evidence shows that A. C. Pruitt used the open space for garden purposes and at all times rented the small house and collected the rents, exercising exclusive control over same. He had possession and control of the small house and the garden space at all times. Whatever use appellant ever made of the small house was permissive. Likewise her occupancy of the home place. Permissive occupation by Pruitt and mere expectation of a gift of the property by appellant did not bring the case within the rule controlling parol gifts of land above discussed. Murphy v. Stell, 43 Tex. 123. Furthermore, the amount of improvements shown to have been made by appellant were greatly exceeded by the rental value of the premises for the time she occupied same, wherefore she has suffered no detriment by reason of her expenditures, but to the contrary has been benefited by her occupancy. Eason v. Eason, 61 Tex. 225; Martin v. Martin (Tex. Civ. App.) 207 S. W. 188 (writ refused); Trawick v. Buckner Orphans' Home (Tex. Civ. App.) 45 S.W.(2d) 241; West Texas Const. Co. v. Adams (Tex. Civ. App.) 54 S.W.(2d) 547.

The undisputed evidence showing that A. C. Pruitt did not make an oral gift of the land in præsenti to appellant, the jury's finding to this effect is without support, and the judgment for appellees non obstante veredicto was proper and should be affirmed, and it is so ordered.

Affirmed.