**Affirmed and Majority and Dissenting Opinions filed December 15, 2015.**



In The

# Fourteenth Court of Appeals

### NO. 14-14-00401-CV

## IN THE ESTATE OF ROBERT L. WRIGHT, DECEASED

**On Appeal from the Probate Court No. 1
Harris County, Texas
Trial Court Cause No. 410,300**

## D I S S E N T I N G   O P I N I O N

Robert L. Wright purchased real property (105 Sweeney Street in West Columbia, Texas), intending to give the property to appellee Leroy Stroman at some future point. Stroman began living on the property and, for a few years, paid Wright a monthly sum before Wright told Stroman no further payments were necessary, indicating that Wright would leave the property to Stroman in Wright's will. Although Wright signed wills that would have given the property to Stroman, Wright did not leave the property to Stroman in the will admitted to probate. The trial court determined, however, that Wright gave Stroman the property as a gift before Wright's death. Appellant Robert Tautenhahn, the independent executor of

Wright's estate, now challenges the ruling on appeal.

The majority affirms the judgment even though the record contains no evidence that Wright ever had the requisite donative intent to give the gift. Because the evidence is legally insufficient to support the trial court's finding that Wright made an oral gift of the Sweeney Street property to Stroman, this court should reverse and render judgment against Stroman. The majority also affirms the trial court's award of attorney's fees under a permissive-fee statute even though Stroman did not plead for attorney's fees and the parties did not try the issue by consent. The trial court erred in awarding attorney's fees in the absence of a mandatory-fee statute, pleadings requesting fees, and trial by consent. This court should reverse the attorney's fee award, too.

### Insufficiency of the Evidence to Support a  Parol-Gift Finding

Texas sets the bar high for those seeking to prove a parol gift of real estate. Because the evidence is legally insufficient to establish the critical element of an intention to make a present gift of the Sweeney Street property to Stroman, the trial court's parol-gift finding cannot stand.

The burden of proving a gift of real property rested on Stroman, as the party asserting the parol gift.[1]  To establish a parol gift of real property, Stroman had the burden to prove Wright had the requisite donative intent *at the time of the alleged gift*.[2]  Stroman had to show that Wright intended to immediately divest himself of ownership and vest immediate ownership in Stroman.[3]  Texas law is demanding and unforgiving on this point.  If real estate could be conveyed by seizing on

---

[1] *Green v. Canon*, 33 S.W.3d 855, 858 (Tex. App.—Houston [14th Dist.]  2001, pet. denied).

[2] *See Lopez v. Lopez*, 271 S.W.3d 780, 788 (Tex. App.–Waco 2008, no pet.); *Troxel v. Bishop*, 201 S.W.3d 290, 297 (Tex. App.—Dallas 2006, no pet.).

[3] *See Starr v. A.J. Struss & Co.*, No. 01-14-00702-CV, 2015 WL 4139028, at *5 (Tex. App.—Houston [1st Dist.] Jul. 9, 2015, no pet.) (mem. op); *Troxel*, 201 S.W.3d at 297.

2

fragments of casual conversation, the purpose of the statute of frauds would be defeated. That is precisely why the parol-gift exception is narrow and the standards of proof exacting. Permissive occupation of the land and mere expectation of a gift are not enough to show donative intent.[4]

When reviewing the legal sufficiency of the evidence, the court is to consider the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it.[5] We are to credit favorable evidence if a reasonable factfinder could and disregard contrary evidence unless a reasonable factfinder could not.[6] We must determine whether the evidence at trial would enable reasonable and fair-minded people to make the findings at issue.[7] The factfinder is the sole judge of witness credibility and the weight to give to testimony. [8] Thus, to affirm the trial court's finding of a parol gift, this court must conclude that the trial evidence would enable reasonable and fair-minded people to find that at some point before his death, Wright intended to immediately divest himself of ownership of the Sweeney Street property and to vest immediate ownership of this property in Stroman.[9] Nothing in the record supports that notion.

### No Evidence of Requisite Intent

Stroman consistently testified that Wright promised to leave the Sweeney Street property to Stroman in his will. The majority finds more than a scintilla of evidence to support the finding that Wright intended to make a present gift to

---

[4] *See Murphy v. Stell*, 43 Tex. 123, 134 (1875).

[5] *City of Keller v. Wilson,* 168 S.W.3d 802, 823 (Tex. 2005).

[6] *See id.* at 827.

[7] *See id.*

[8] *See id.* at 819.

[9] *See id.*

3

Stroman. According to the majority, the following evidence is sufficient to find Wright had the requisite intent to vest ownership of the Sweeney Street property in Stroman:

- Wright bought the property with the intention of at some point conveying it to Stroman;
- Stroman paid Wright rent for about two years and then Wright told Stroman not to pay anymore because the property was Stroman's;
- Wright switched the insurance on the property to Stroman's name and Stroman paid the premiums;
- During mold remediation on the property, the insurance company dealt only with Stroman.

Testimony that Wright bought the Sweeney Street property with the intention of conveying it to Stroman is not evidence of a present intention to vest immediate ownership in Stroman, particularly when Stroman paid Wright for that property for a period of time. Likewise, evidence that Wright then allowed Stroman to live on the property without paying rent, but required Stroman to pay the insurance premiums and maintain the property, is not evidence Wright intended to vest immediate ownership of the property in Stroman.[10]

The only evidence the majority cites that could evince the requisite intention is the majority's statement that "Wright told Stroman the property was Stroman's."[11] But, there is no evidence in the record that would enable reasonable and fair-minded people to find Wright told Stroman that the Sweeney Street property was "Stroman's" because Wright intended to immediately divest himself of ownership of the property, as opposed to being "Stroman's" because Wright promised to leave the property to Stroman in his will.

---

[10] *See id.*

[11] *Ante*, at p. 12.

After testifying that Wright bought the Sweeney Street property in 1994, Stroman testified on direct examination as follows:

Q: So you all [Wright and Stroman] had an agreement that you would pay him $400 a month for the house?
A: Yes. . . .
Q: Okay. Now how long did you pay on the note for that house?
A: Two years.
Q: How many?
A: Two years or a little over.
Q: Well, in two years you wouldn't have paid off the purchase price of the house?
A: No.
Q: So what happened after the end of the two-year period?
A: He told me that that was it, that that was my house, he was stopping the notes now and that he was putting it in his Will.

 * * *

Q: [W]hy did you not try to get Mr. Wright to go ahead and deed the house to you as opposed to leaving it in the Will?
A: I trusted Mr. Wright. He showed me the Will and whatever was in there.

* * *

Q: And at some point in time, did Mr. Wright tell you that — that you owed him no more on the house?
A: Yes.

Q: Okay, and when was that?
A: It was two years or better that I paid him that and he told me that was it, the house was mine.

* * *

Q: Now, after he purchased the house, did he make you sign any type of agreement?
A: No.

Q: Or did you sign an agreement to that effect?
A: We didn't sign no agreement. We shook hands and I thanked him, and I can't remember how long later, but he brought that Will —

Q: No, I'm just asking about the agreement.
A: No, there was nothing written.

* * *

Q:     Okay. Now when did he [Wright] tell you he was going to transfer title to your name?

* * *

A:     He said he was going to put it in his Will and he did.

Q:     Okay. So that's how you expected the transfer of title to come about from him to you?

A:     Yes, after he showed me the Will.

The majority interprets Stroman's testimony as evidence that Wright made a pronouncement giving the Sweeney Street property to Stroman. But, the words "[h]e told me that was it, that that was my house" cannot be fairly read by plucking them from testimony as if they stood alone. Stroman clearly states several times that Wright's intent was to make the property Stroman's by a bequest in Wright's will. Isolating a handful of words made in this context does not convert a promise to give the property in the will into a present intention to immediately transfer ownership of the property. Consistent with his understanding that there was no completed parol gift of the property, in 2010, Stroman asked that the Sweeney Street property be transferred into his name when Wright became ill. Stroman not only testified to these critical facts, he made them a basis for many of his filings in probate court.

For example, Stroman acknowledged unequivocally in his "Motion for Reimbursement or in the Alternative to be Deemed a Creditor" that the alleged oral gift was rooted in Wright's promise to bequeath the property to Stroman in Wright's will, stating "Stroman paid approximately $400.00 per month and after two years, Wright advised that he wanted no further payments, but would make provisions for him [Stroman] to have the house in his [Wright's] will." Similarly, James Wleczyk testified that, on one occasion in the fall of 2009 or 2010, Wright "indicated to me . . . that [Stroman] would be a rich man when [Wright] died. He

6

said there was a lot of properties that [Wright] was going to leave [Stroman] . . . ."

According to Stroman, two other Wright wills (the unproduced will and the April 2010 will) included specific bequests of the Sweeney Street property to Stroman. Robert Tautenhahn testified about Wright's desire to have Stroman evicted from the house in late 2011. This evidence also signified Wright's clear intent not to make a gift of the Sweeney Street Property in 1996, as the majority concludes, but rather to retain title during Wright's lifetime and convey the property to Stroman by will.

Wright's intention to include the Sweeney Street property in his will negates the intention to make an inter vivos gift of that property. Because a will is without legal effect until the time of the testator's death, a statement that a testator intends to bequeath property in a will evinces only an intention to make the gift in the future.[12] A gift by will is a future gift, not a present gift.[13]

Considering the trial evidence in the light most favorable to the challenged finding, indulging every reasonable inference that would support the finding, crediting favorable evidence if a reasonable factfinder could, and disregarding contrary evidence unless a reasonable factfinder could not, the trial evidence would not enable reasonable and fair-minded people to find that, before his death, Wright intended to immediately divest himself of ownership of the Sweeney Street property and to vest immediate ownership of this property in Stroman.[14] The evidence is legally insufficient to support any finding of a completed parol gift of

---

[12] *See O'Donnell v. Halladay*, 152 S.W.2d 847, 851 (Tex. Civ. App.—El Paso 1941, writ ref'd w.o.m.).

[13] *See id.*

[14] *See Dorman v. Arnold*, 932 S.W.2d 225, 228 (Tex. App.—Texarkana 1996, no writ); *Olive v. Olive*, 231 S.W.2d 480, 483 (Tex. App.—Dallas 1950, no writ).

the Sweeney Street property to Stroman during Wright's lifetime.[15] Therefore, this court should reverse the trial court's award of the Sweeney Street property to Stroman (and the resulting constructive trust) and render a take-nothing judgment on Stroman's claim for ownership of that property.

### *The Majority's Failure to Follow Binding Precedent Requiring Consideration of All Evidence Admitted at Trial*

In determining whether the evidence is legally insufficient to support a finding of a completed parol gift of the Sweeney Street property to Stroman, this court is supposed to consider all evidence admitted at trial.[16] But, the majority fails to consider all evidence admitted at trial in its legal-sufficiency analysis. The majority states cryptically (and incorrectly) that this dissenting opinion quotes testimony on this issue that the trial court excluded from evidence.[17] The majority does not identify the testimony to which it refers.[18] Nor does the majority explain why it fails to do so. If the majority believes testimony was excluded, it should say what the testimony is and show where it was excluded.

The record shows that all of the evidence quoted in this dissenting opinion was admitted at trial. The majority wrongly concludes that unspecified testimony was excluded and thus should not be considered in the legal-sufficiency analysis. Every iota of testimony cited in this dissent was admitted and must be considered in this analysis.[19] By incorrectly determining that the trial court excluded some of this testimony, the majority is failing to follow precedent requiring this court to

---

[15] *See Dorman*, 932 S.W.2d at 228; *Olive*, 231 S.W.2d at 483.

[16] *See Approx. $14,980 v. State*, 261 S.W.3d 182, 190 n. 6 (Tex. App.—Houston [14th Dist.] 2008, no pet.).

[17] *See ante* at pp. 12–13, n.7.

[18] *See id*.

[19] *See id.*; *Approx. $14,980*, 261 S.W.3d at 190 n. 6.

8

consider all evidence admitted at trial in the legal-sufficiency analysis.[20]

## Abuse of Discretion to Award Attorney's Fees

In the final judgment, the trial court awarded Stroman $57,179.15 in attorney's fees to be paid by the estate. Absent a mandatory statute, a judgment awarding attorney's fees must be supported by proper pleadings or tried by consent.[21] Neither criteria is satisfied.

Stroman failed to include a request for attorney's fees in his live pleadings, and the issue was not tried by consent. Tautenhahn objected at trial to the admission of evidence of attorney's fees for lack of pleading as soon as Stroman attempted to offer it. Stroman did not request a trial amendment during trial or at any other time. To this day, Stroman has not asked for leave to file a trial amendment to include a request for attorney's fees in his pleadings, and the trial court has never granted Stroman leave to do so.

The majority cites precedent from our sister courts holding that a post-verdict motion for attorney's fees constitutes a trial amendment. But, Stroman's "Authority for Attorney's Fees" is not a post-verdict motion. The trial court invited Stroman to file authority explaining why Stroman was entitled to attorney's fees. In Stroman's post-trial brief, Stroman insisted, incorrectly, that his live pleading already included a request for attorney's fees, and Stroman presented authority explaining that the statutes allowed the trial court to award fees. Though in the prayer of the "Authority for Attorney's Fees," Stroman stated that he "should be awarded fees," a supplemental brief is not a motion or a trial

---

[20] *See Approx. $14,980*, 261 S.W.3d at 190 n. 6.

[21] *In re Estate of Gaines*, 262 S.W.3d 50, 60 (Tex. App.—Houston [14th Dist.] 2008, no pet.).

amendment or a request for one.[22] But, even if the substance of the "Authority for Attorney's Fees" could be considered a request for a trial amendment, the document was filed without leave of the court.[23]

Requiring a party to seek leave of court to file a trial amendment before or during trial allows the opposing party to object and assert surprise or prejudice. Stroman's "Authority for Attorney's Fees" did not place Tautenhahn on notice that Stroman was seeking to amend his pleadings (the document contained no such request) and so Tautenhahn had no notice or opportunity to object. For this reason, and because Stroman's "Authority for Attorney's Fees" is not a motion for attorney's fees, this court should construe Stroman's filing as a memorandum of law rather than a motion for attorney's fees, an amendment of Stroman's pleadings, or a motion for leave to amend the pleadings.

Texas law does not allow recovery for unpled claims because it would be unfair to award a judgment against a party who had no notice of the claim and did not consent to try it in the absence of pleadings. Because there is no pleading that could possibly support the attorney's fee award and because the issue was not tried by consent, this court should reverse the trial court's attorney's fee award.[24]

## Conclusion

Stroman is not entitled to the Sweeney Street property because the trial evidence is legally insufficient to support any finding of a completed parol gift of

---

[22] *See Arrecchea v. Arrechea*, 609 S.W.2d 852, 854 (Tex. App.—Houston [14th Dist.] 1980, writ ref'd n.r.e.).

[23] *See* Tex. R. Civ. P. 63; *Carr v. Houston Business Forms, Inc.*, 794 S.W.2d 849, 851 (Tex. App.—Houston [14th Dist.] 1990, no writ). *See also Ritzell v. Espeche*, 87 S.W.3d 536, 538 (Tex. 2002) (holding docket notation granting leave to amend summary-judgment motion insufficient to grant leave to amend).

[24] *See In re Estate of Gaines*, 262 S.W.3d at 60.

the property to Stroman during Wright's lifetime. And, Stroman is not entitled to the attorney's fees because he did not plead for them and the claim was never tried by consent. Therefore, the court should (1) reverse the portions of the trial court's judgment that award the Sweeney Street property to Stroman, impose a constructive trust on that property, and award attorney's fees to Stroman, and (2) render judgment that Stroman take nothing. Because the court does not, I respectfully dissent.

/s/     Kem Thompson Frost
        Chief Justice

Panel consists of Chief Justice Frost and Justices Jamison and Busby (Jamison, J. majority)

11