### OLIVE et al. v. OLIVE.*
### No. 14223.

Court of Civil Appeals of Texas. Dallas.
May 26, 1950.

Rehearing Denied June 23, 1950.

Dalford Todd, Hughes & Monroe and P. P. Ballowe, all of Dallas, for appellants.

Irwin & Irwin, T. K. Irwin, Jr., of Dallas, for appellee.

YOUNG, Justice.

The suit below was by appellee, independent executor of the estate of Eunice Olive, against John D. Olive, Sr., for recovery of $4,005.04 on behalf of the estate; defendant claiming that the money was a gift from decedent during her lifetime. On hearing, the claim of gift was rejected and judgment rendered in favor of the executor for above amount, from which final order this appeal has been seasonably undertaken.

The parties hereto (appellant and appellee) were nephews of Miss Olive, decedent, a feme sole having never been married, who died July 22, 1949. She was a trained nurse, practicing her profession in Dallas for many years with addition of overseas duty in World War I; and had acquired during lifetime a modest estate in real and personal property. The last will of Miss Olive dated November 23, 1937 appointed

* Harold R. Nunn, administrator de bonis non, substituted as appellee herein by leave of court.

James Wiggins Olive independent executor and gave him her homestead on Junius Street, Dallas. This instrument with codicil, duly probated, contained other bequests not material here, including gift of an automobile to appellant; the residuary clause dividing balance of estate equally between five named nieces and nephews, viz.: Alma Olive McKay, Anne Olive, Bessie Olive, Harold Nunn and appellant John David Olive. The codicil dated December 4, 1944, also unimportant here, bore upon particular personal articles and furniture including the following: "For David, I want him to have large rocking chair and to choose what books and other small things in my apt. (apartment)." It appears without dispute that some years before her death Miss Eunice had deeded the Junius Street homestead (previously devised by 1937 will) to James Wiggins Olive; and the record shows inferentially that the automobile mentioned as a devise to appellant had been disposed of during her lifetime.

At one time appellee (James Wiggins Olive) had been designated by Miss Eunice as agent to sign checks concerning her account in the First National Bank, Dallas, but later and on August 2, 1948 the arrangement was changed and a joint account set up between deceased and appellant, both signing a form of account card reading: "To First National Bank in Dallas, Dallas, Texas: The persons named above hereby open a checking account in First National Bank in Dallas on the terms and conditions stated on the deposit slip or pass book evidencing the deposit made into such account on this day or on the date nearest to the signing hereof, and by the signatures which appear below such persons hereby agree to such terms and conditions. In addition, First National Bank in Dallas is hereby authorized to pay to either of the undersigned, or to the survivor of them any funds now on deposit in such account, as well as any additions hereafter made thereto by either of the undersigned." According to stipulation of parties monies comprising this account were the separate property of Miss Olive, consisting of an accumulation of personal checks from the United States Government and oil royalties, averaging about $360 per month, balance on hand at time of her death being $4,005.04. It was further agreed and stipulated that John D. Olive, Sr., had made no deposits in above joint account; that Eunice Olive thereafter wrote numerous checks on same, paying personal bills, contributing to charitable organizations, etc.; that John D. Olive, Sr., wrote no checks thereon except one for $1,000, on cashier's check which he sent to Eunice Olive in California where she had been hospitalized, and another for $10, a repayment to himself for money loaned to his aunt in cash; that the book of deposit issued by the bank on opening of the account remained in exclusive possession of Eunice Olive; and that said appellant withdrew the whole of this joint deposit from the First National Bank and placed it to his own personal account after death of Miss Olive.

It is strenuously argued that judgment should have been rendered in appellant's favor on either of two grounds: (1) That the money in dispute belonged to him by virtue of this "joint survivorship account" established by deceased and John D. Olive, Sr. in the bank prior to her death; or (2) the record facts conclusively show that when, on August 2, 1948, deceased set up the account jointly with appellant, her intention was to vest in appellant survivor a present interest in said account; in other words, a completed gift.

The controlling factor in determination of a gift inter vivos is intent of the donor, hence we turn to an examination of the acts and conduct of the parties attendant upon and following establishment of this deposit. Of the disinterested witnesses called on behalf of appellant, Alma Gray, the housemaid, was present at the signing of the joint deposit card and testified to a statement of the deceased that she had put her money in "Mr. David's hands"; answering "Yes," however, to the following query on cross-examination: "And what she said when she was talking about this card was she wanted to fix it so that John D. Olive, Sr., would get the money at her

death, is that right?" Further testimony of witnesses, elicited on both direct and cross-examination, is quoted:

Mrs. Watkins: "Q. (referring to deceased) What did she tell you? A. She said that she wanted—she just looked over at an old dresser in the room, she said, 'I want Alma to have that dresser or any of the furniture in this apartment, and of course David will get what money I have in the bank, it won't be much,' is the way she said it, 'But I want him to have what's left.' 'I will write a few more birthday bonds, and he won't bother the money until —' She said, 'He may write checks when my hands—' her hands were awfully crippled, when she couldn't write them * *.

"Q. Mrs. Watkins, let me see if I get your testimony just exactly right, sometimes it's very important that you have exact testimony. Do I understand you correctly when—I understand that Miss Olive had her hands crippled, and she was talking to you about this joint account? A. Yes.

"Q. And that Mr. John David Olive, Sr., wouldn't write any checks on the account except when she couldn't, is that what you meant? A. No, he could write them any time, she wanted him to, but she knew that he wouldn't write them, she didn't want him to write them unless she asked him to until after her death, then it was his, because she might write some birthday bonds. * * *

"Q. And your best understanding and recollection of the conversation that you had with Miss Olive about the bank account was that at her death what was left, or what little was left— A. In the bank was David's.

"Q. —was to go to John David? A. Yes. She had done for her other nephews' children, but she hadn't for him.

"Q. Now, do you remember her exact words that she used about what little would be left? A. Well, she said, 'What I have left,' she said—I don't mean little; she said, 'It won't be too much, but what I have left in the bank will be his,' and I said, 'You should have that in writing,' and

she said, 'I have it, I have a will and I also have it fixed at the bank.'"

Mrs. M. Stuart Seely: "Q. Now, Mrs. Seely, during the latter part of Miss Olive's life, and along in about July, August, September, 1948, did you have occasion to talk with Miss Olive about her money in the bank, did she ever say anything to you about it? * * * What did she tell you about it? A. Well, she said she was having a survivor joint account fixed for her and David so that David would get the money, if anything was left over after she was gone. * * *

"Q. And she planned on using the account and writing checks on it? A. So long as she lived, yes.

"Q. That was her intention? A. Yes, and when she was no longer able to write them, you know she was afflicted with arthritis, and in case she was no longer able to write them, then of course she would have to depend on other people, and she selected David.

"Q. Now, did she tell you that? A. Yes, she did.

"Q. Then the purpose at the time she opened the account with John David Olive, Sr., was that in case she got to where she couldn't write, during her lifetime, that John David Olive, Sr., could write the checks for her, is that correct? A. Her purpose in having that survivor's joint account was that David would get the money at her death. * * *

"Q. All right. Now, her two objects then, let us get them one at a time. The two objects were, first, from your testimony, is that at her death he should get the money? A. That's right.

"Q. * * * And the second object was that prior to her death, that if she were unable to write checks that he could write them for her? A. That's right."

Mrs. Harold Nunn testified for appellee that John D. Olive, Sr., in a conversation about the business affairs of Miss Olive after her death, had remarked: "Why, she's got several thousand dollars in the bank, what about that?" This statement appellant denied.

Under above testimony the conclusion is well-nigh compelling that it was the purpose of Miss Olive to retain the beneficial interest in aforesaid joint deposit during lifetime, intending merely that whatever was left at her (the donor's) death should pass to appellant. That, under these circumstances, the survivor's rights cannot be sustained as a gift is the holding of courts the country over; our own courts being firmly committed to the rule that to constitute a gift inter vivos there must not only be a donative intention but also a complete stripping of the donor of all dominion or control over the thing given. Fleck v. Baldwin, 141 Tex. 340, 172 S.W.2d 975; Peterson v. Weiner, Tex.Civ. App., 71 S.W.2d 544, writ refused; Stevenson v. Earl, 65 N.J.Eq. 721, 55 A. 1091; 103 Am.St.Rep. 790, 1 Ann.Cas. 49. So, in the instant situation there was no final act carrying to completion the intention of the donor, even though appellant had the legal right to withdraw funds during lifetime of the donor and had exercised that right by making withdrawals; 7 Am.Jur., sec. 430, p. 303; all withdrawals here having been made obviously for her convenience. If, however, above donative language imported an intent on part of Miss Olive to give an outright interest in the deposit, at most it would consist of that portion left at her death; and a gift intended to take effect at death is uniformly characterized as an attempted testamentary disposition of property and effectuated only by means of a valid will. Fleck v. Baldwin, supra; Peterson v. Weiner, supra.

Neither does the form and content of this joint deposit card conclusively establish ownership of the account in appellant. The rule sustained by a majority of cases is that the mere fact that money is deposited to the account of the owner and another, payable to either or survivor, or similar language, does not of itself evidence an intention to make a gift. 7 Am. Jur., sec. 428, p. 302. See Pruett v. First National Bank of Temple, Tex.Civ.App., 175 S.W.2d 658, holding that where a mother made a deposit in bank to credit of herself and son or either of them, with survivorship clause, there was no gift of the money on deposit to such son.

Manifestly, Miss Olive intended that appellant should become sole owner of the bank account in question at her death, but unfortunately the means used to accomplish this end was inoperative as in total disregard of the requirements contained in the law of wills, Art. 8281 et seq., Vernon's Ann. (Civ.) St.; title to the funds in question passing to the donor's estate. Judgment of the trial court must be in all respects affirmed.