**Affirmed and Majority and Dissenting Opinions filed December 15, 2015.**



In The

# Fourteenth Court of Appeals

## NO. 14-14-00401-CV

## IN THE ESTATE OF ROBERT L. WRIGHT, DECEASED

**On Appeal from Probate Court No. 1**
**Harris County, Texas**
**Trial Court Cause No. 410,300**

## M A J O R I T Y   O P I N I O N

This appeal concerns the disposition of a particular piece of property owned by the decedent, Robert L. Wright. Appellant Robert Tautenhahn is the independent executor and a named beneficiary of the will admitted to probate. Appellee Leroy Stroman contested the will and sought to establish his entitlement to the particular property, among other things. The trial court held that the will in question was valid and properly admitted to probate but that Wright had gifted the property to Stroman. Accordingly, the trial court created a constructive trust over the property favoring Stroman. The trial court also awarded attorney's fees to

Stroman to be paid from Wright's estate because Stroman in good faith defended a different will in which he was a named beneficiary.

In three issues on appeal, Tautenhahn contends that (1) the trial court erred in basing its decision that Wright made a gift of the property to Stroman on testimony that was inadmissible under the so-called Dead Man's Rule, (2) the evidence was legally insufficient to support the trial court's gift finding, and (3) the trial court erred in awarding Stroman attorney's fees.[1] We affirm.

## *Background*

Prior to his death, Robert L. Wright owned several properties in Brazoria and Harris counties in Texas. When Wright died on January 10, 2012, at the age of 87, he was not married and had no surviving children, parents, or siblings. A will purportedly executed on July 7, 2010 was admitted to probate on February 21, 2012. This will named Robert Tautenhahn as independent executor and bequeathed half of Wright's estate to Tautenhahn and half to Lindsey Bozeman. Bozeman disclaimed her share of the inheritance shortly after Wright's death. Leroy Stroman subsequently filed an application to contest the validity of the will, alleging forgery, undue influence, and a lack of testamentary capacity. Stroman asserted that another, unproduced instrument that bequeathed several properties to him was the proper will to be probated. Stroman further alleged that Wright had gifted him a property located at 105 Sweeney Street in West Columbia, Texas and in the alternative, that he was entitled to reimbursement for expenses at that

---

[1] In his appellate brief, Stroman raised cross-issues and requested more relief than the trial court had already given him. Tautenhahn filed a motion to strike those portions of Stroman's brief. We granted that motion and struck the portions of Tautenhahn's brief raising cross-issues and requesting greater relief than he received from the trial court. *See In re Estate of Wright*, No. 14-14-00401-CV (Tex. App.—Houston [14th Dist.] March 30, 2015, order). Accordingly, we will not further consider the cross-issues or requests for greater relief in this appeal.

property.

Stroman testified that he began working for Wright in 1987 or 1989, initially doing general maintenance and later as a manager and supervisor for many of Wright's properties.[2]  According to Stroman, he had a very close relationship with Wright, "like father and son."  When Stroman told Wright that a house he liked, at 105 Sweeney Street, was put on the market in 1994, Wright bought the house and gave Stroman the keys.  For the next two years or so, Stroman paid Wright $400 a month for the house.  Wright then told Stroman "that was it," the house was Stroman's.  Stroman said that he never tried to get Wright to sign over a deed to the property because he trusted Wright and, shortly after Stroman made the last payment, Wright showed him a copy of a will which showed Stroman as receiving the 105 Sweeney Street property.  Tautenhahn acknowledged that such a will existed at one time but argued it was superseded by later wills.  Copies of the will shown to Stroman apparently were discarded when Wright's condo was cleaned out while he was in the hospital, and no copy was produced at trial.

Stroman further stated that he had lived at the 105 Sweeney Street property continuously since about 1994 except for an eight month period when the house was being remediated due to mold.  Stroman said that he paid the property insurance premiums and the insurance was in his name.[3]  When the mold remediation occurred, the insurance company only dealt with Stroman and made the checks out to Stroman and the remediation contractor.  Stroman estimated the total amount of insurance proceeds—including that needed to restore the home and

---

[2] Much of the testimony and other evidence at trial related to the state of Wright's mental faculties in and around July 2010, when the probated will was signed.  Other evidence related to the contentions of forgery and undue influence.  That evidence will not be recounted in detail here as it is unnecessary to the issues properly raised in the appeal.

[3] Stroman said that initially Wright took out the insurance policy but then put it in Stroman's name as insured and paid the premiums out of Stroman's paycheck.

3

provide him with a hotel room while the work was being done—at $135,000. He further valued the current worth of the house to be around $100,000.

James Wleczyk testified once in casual conversation, Wright told him that he was going to leave a lot of properties to Stroman when he died because Stroman was the only one "that he could count on when he needed something." According to Wleczyk, Wright indicated all of his properties in West Columbia would be left to Stroman, including the house Stroman was then living in, which Wleczyk referred to as "Leroy's house." Wleczyk recalled that this conversation occurred in 2009 or 2010.

Tautenhahn testified that he met Wright in 1961 through the Big Brothers Association when Wright was assigned as Tautenhahn's mentor. According to Tautenhahn, they kept in touch over the years; "it's kind of like having an uncle, he is just always there," he said. In 2009, Wright asked Tautenhahn to help him with his rental properties and straighten out his finances.

Tautenhahn stated that in 2010, he had a crew of workers clean Wright's condo, which apparently was full of papers and other possessions retained through the years. According to Tautenhahn, Wright regularly had wills prepared, and the crew discovered and discarded copies of a number of wills. Tautenhahn explained that he assumed if anyone needed one of the wills, a copy would be found in a safe place. In addition to the July 7, 2010 will that was admitted to probate, wills from 1979 and 1997 were admitted into evidence. The 1997 will included Stroman as a beneficiary, but Stroman said that was not the will Wright had shown him. The 1997 will bequeathed a percentage of Wright's estate to Stroman rather than naming specific properties. Tautenhahn acknowledged that while cleaning Wright's condo, he saw a document that listed Stroman as the recipient of 105 Sweeney Street. He did not recall specifically whether it was a will or a deed, but

4

he said, "It read more like a will." When Wright began having medical issues, Stroman asked to have 105 Sweeney Street transferred into his name. Tautenhahn pressed Wright to transfer the property and even began the process, but Wright refused because Stroman had not been appreciative. Tautenhahn explained that it would have helped Wright's finances to be rid of the property because its taxes were overdue. In November 2011, Tautenhahn attempted to have Stroman evicted from 105 Sweeney Street.[4] Tautenhahn said the eviction proceeding was at Wright's direction as Wright had come to feel Stroman was "not very appreciative." In his testimony, Stroman noted that in prior wills, Wright had consistently provided significant gifts for the University of Texas, thus casting doubt on the validity of the July 7, 2010 will, which left nothing for the university. Stroman said that Tautenhahn called him at one point and was reading parts of Wright's will over the phone that left properties to Stroman, asking Stroman, "what kind of damn hold do you have on Mr. Wright?"

When the trial court asked Stroman whether he was making a legal or equitable argument that the property became his prior to Wright's death or that there is a purported will that had not been produced, Stroman replied "both." Stroman further acknowledged that taxes were past due on the property. He said that he thought those were going to be paid by the estate and he saw no reason to

---

[4] The evidence suggests that Tautenhahn made two attempts to evict Stroman from the property. The first attempt, while Wright was still alive, resulted initially in Stroman being removed from the property, but that decision was apparently withdrawn at some point and Stroman returned. The second attempt occurred after Wright's death when Tautenhahn was named independent executor. The outcome of this proceeding was not explicitly discussed at trial, but Stroman remained on the property at that time. Other details regarding the two attempts at eviction are sketchy in the record.

This court has already issued an opinion in an appeal in Tautenhahn's forcible entry and detainer action against Stroman. *Stroman v. Tautenhahn*, 465 S.W.3d 715 (Tex. App.—Houston [14th Dist.] 2015, pet. dism'd w.o.j.). The issues addressed in that appeal are not relevant to the present case.

pay the taxes if he was not going to be awarded the property.

At the conclusion of the trial, the court permitted Stroman's attorney to put on evidence regarding her fees, while withholding judgment as to whether those fees were recoverable in the case. Tautenhahn objected to any award of fees primarily based on Stroman's failure to plead for such relief. At the trial court's invitation, Stroman filed a post-trial document entitled "Authority for Attorney's Fees," setting forth the basis for his request that fees be awarded.

In its final judgment, the trial court determined that the July 7, 2010 will was valid, that Wright had testamentary capacity when he executed it, that no fraud or forgery occurred, and that no undue influence was brought to bear on Wright to sign the will. The court further determined that the July 7, 2010 will revoked all previous wills, codicils, and testamentary devices of Wright and that Tautenhahn was properly appointed independent executor under the will. Regarding 105 Sweeney Street, however, the trial court determined that Wright had made "a completed oral gift" of the property to Stroman in or around 1996. On that basis, the court ordered the property be placed in a constructive trust and transferred by special warranty deed to Stroman as the sole beneficiary of the constructive trust. The court noted that this order rendered Stroman's claim for reimbursement of expenses moot. Lastly, the trial court ordered Tautenhahn, as independent executor, to pay Stroman's attorney's fees as a good faith proponent of a purported will under former Probate Code section 243. The court calculated Stroman's attorney's fees to be $57,179.15. All requested relief not expressly granted in the judgment was denied. The trial court's subsequent findings of fact and conclusions of law essentially track the holdings in the final judgment.

### Dead Man's Rule

In his first issue, Tautenhahn contends that the trial court erred in basing its

6

finding of an oral gift of 105 Sweeney Street on evidence that was inadmissible under the Dead Man's Rule. This hybrid argument neither expressly asserts the trial court erred in admitting evidence that should have been excluded nor directly challenges the legal sufficiency of the evidence (as does Tautenhahn's second issue). Regardless, we conclude that the factual premise on which the argument is based—that the trial court based its decision on inadmissible evidence—is not supported by the record.

The Dead Man's Rule generally prohibits a party to certain types of lawsuits from testifying regarding oral statements by a testator unless the statements can be corroborated or are solicited by the opposing party. Tex. R. Evid. 601(b).[5] As Tautenhahn points out, Stroman testified, or attempted to testify, several times regarding what Wright said about 105 Sweeney Street. Tautenhahn maintains that

---

[5] Effective April 1, 2015, after trial in this case, Rule 601(b) was amended "to clarify its meaning without making any substantive changes." Tex. R. Evid. 601 cmt. Neither party suggests that any difference between the two versions has any relevance in this case. The relevant portions of the current version of the Dead Man's Rule read as follows:

**(b) The "Dead Man's Rule."**

> **(1) Applicability.** The "Dead Man's Rule" applies only in a civil case:
>
> > **(A)** by or against a party in the party's capacity as an executor, administrator, or guardian; or
> >
> > **(B)** by or against a decedent's heirs or legal representatives and based in whole or in part on the decedent's oral statement.
>
> **(2)** General Rule. In cases described in subparagraph (b)(1)(A), a party may not testify against another party about an oral statement by the testator, intestate, or ward. In cases described in subparagraph (b)(1)(B), a party may not testify against another party about an oral statement by the decedent.
>
> **(3)** Exceptions. A party may testify against another party about an oral statement by the testator, intestate, ward, or decedent if:
>
> > **(A)** the party's testimony about the statement is corroborated; or
> >
> > **(B)** the opposing party calls the party to testify at the trial about the statement.

this testimony violated the Dead Man's Rule because it described oral statements by a testator and was not corroborated or solicited by an opposing party.

Tautenhahn additionally points out his trial counsel objected several times when Stroman attempted to testify regarding Wright's remarks. The trial court, in fact, **sustained** most of the Dead Man's Rule objections, thus excluding the objected-to testimony.[6] However, Tautenhahn's lawyer did not request a running objection to such evidence and did not object to the following exchanges between Stroman and Stroman's counsel:

> Q. Okay. And did Mr. Wright have—did Mr. Wright tell you that he would purchase the house for you?
>
> A. Yes.
>
> Q. And how much did you have to pay him monthly on the payment for the house?
>
> A. Four hundred.
>
> Q. Okay. And at some point in time, did Mr. Wright tell you that— that you owed him no more on the house?
>
> A. Yes.
>
> Q. Okay, and when was that?
>
> A. It was two years or better that I paid him that and he told me that was it, the house was mine.

Because Tautenhahn failed to object to this testimony, the trial court would not have erred in considering it in determining whether Wright made an oral gift of 105 Sweeney Street to Stroman, regardless of whether such evidence would otherwise have been inadmissible under the Dead Man's Rule. *See* Tex. R. App. P.

---

[6] At one point during a discussion of the applicability of the Dead Man's Rule, the trial judge suggested that he might at some point revisit his determination that the rule applied to exclude testimony concerning Wright's statements in respect to 105 Sweeney Street. There is no place in the record, however, where the court explicitly revisited or reversed its original ruling and stated it would consider the previously excluded evidence.

33.1(a) (providing that as a prerequisite to presenting a complaint for appellate review, the record must show that the complaint was made to the trial court in a timely and sufficiently specific manner); *Wilkerson v. Wilkerson*, 321 S.W.3d 110, 121 (Tex. App.—Houston [1st Dist.] 2010, pet. dism'd) (declining to address admissibility of objected-to evidence because similar unobjected-to evidence was sufficient to support trial court's factual finding).

The trial court also overruled a few Dead Man's Rule objections to similar testimony, but even assuming the trial court erred in doing so, the failure to object to the instances set forth above rendered such error harmless. *See, e.g., Katy Int'l, Inc. v. Jinchun Jiang*, 451 S.W.3d 74, 94 (Tex. App.—Houston [14th Dist.] pet. denied); *Austin v. Weems*, 337 S.W.3d 415, 421 (Tex. App.—Houston [1st Dist.] 2011, no pet.). For the foregoing reasons, we overrule Tautenhahn's first issue.

### *Completed Oral Gift*

In his second issue, Tautenhahn challenges the legal sufficiency of the evidence to support the trial court's finding that Wright made a completed oral gift of 105 Sweeney Street during his lifetime. When reviewing for legal sufficiency, we consider the evidence in the light most favorable to the finding and indulge every reasonable inference that supports the challenged finding. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). We credit favorable evidence if a reasonable factfinder could and disregard contrary evidence unless a reasonable factfinder could not. *Id.* at 827. If there is more than a scintilla of evidence to support the finding, the legal sufficiency challenge fails. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 795 (Tex. 2002). As the trier of fact in this case, the trial judge was the sole judge of witness credibility and of the weight to be given testimony. *See City of Keller*, 168 S.W.3d at 819.

Generally, a conveyance of real property must "be in writing" and

"subscribed and delivered by the conveyor" or his agent. Tex. Prop. Code § 5.021 ("Instrument of Conveyance"); *see also* Tex. Bus. & Com. Code § 26.01(a), (b)(4) ("Statute of Frauds"). The general rule does not apply, however, to a parol gift of real estate in equity. *Starr v. A.J. Struss & Co.*, No. 01-14-00702-CV, 2015 WL 4139028, at *4 (Tex. App.—Houston [1st Dist.] July 9, 2015, no pet.) (mem. op.). To establish a valid parol gift of real estate in equity, a party must show: (1) a gift *in praesenti*, that is, a present gift; (2) possession under the gift by the donee with the donor's consent; and (3) permanent and valuable improvements by the donee with the donor's consent or other facts demonstrating that the donee would be defrauded if the gift were not enforced. *E.g., id.*; *In re Estate of McNutt*, 405 S.W.3d 194, 196 (Tex. App.—San Antonio 2013, no pet.); *Troxel v. Bishop*, 201 S.W.3d 290, 297 (Tex. App.—Dallas 2006, no pet.). To be a present gift, the donor must, at the time he makes it, intend an immediate divestiture of the rights of ownership out of himself and a consequent immediate vesting of such rights in the donee. *Starr*, 2015 WL 4139028, at *5; *Troxel*, 201 S.W.3d at 297.

In challenging the sufficiency of the evidence regarding parol gift, Tautenhahn focuses exclusively on the first element, which requires evidence of intent to make a present gift of the property as opposed to a promise of a future gift. Tautenhahn argues that Stroman's admission that Wright stated he would make provision for the property in his will negated as a matter of law any intent to make a present gift of 105 Sweeney Street during Wright's lifetime. We disagree.

Tautenhahn cites *O'Donnell v. Halladay*, 152 S.W.2d 847 (Tex. App.—El Paso 1941, writ ref'd w.o.m.), for the proposition that including property in a will negates any intention to make a present gift. *O'Donnell*, however, is readily distinguishable. The jury there found that no gift had been made despite the donor's delivery of his bank passbook to the plaintiff. *Id*. at 848-49. An

10

instrument that purported to be a will evidenced an intention to make a gift in the future and was sufficient to support the jury's finding. *Id*. at 851. The court observed no evidence of the donor's intention sufficient to constitute a gift in connection with the delivery of the passbook. *Id*. Here, the trial judge found evidence of a completed life-time gift in connection with the delivery of the property to Stroman.

Tautenhahn also cites two cases to support his argument that evidence a donor intended for property to remain his until death negates present donative intent. *See Dorman v. Arnold*, 932 S.W.2d 225 (Tex. App.—Texarkana 1996, no writ); *Olive v. Olive*, 231 S.W.2d 480 (Tex. Civ. App.—Dallas 1950, no writ). Again, both cases are readily distinguishable. In *Dorman*, testimony clearly established that although the donee's name was placed on a CD and savings account prior to the donor's death, the contemplated gift was of whatever funds remained in the savings vehicles at the time of the donor's death and not before. 932 S.W.2d at 227-29. Similarly, in *Olive*, although the donor and donee opened a joint bank account with a right of survivorship, evidence was clear that the donor intended for the donee to receive whatever funds remained in the account at the time of the donor's death. 231 S.W.2d at 481-83. In each case, the donor intended to use the money in the account during the balance of the donor's lifetime. There was simply no evidence of an intention to make a present gift. Here, in contrast, the language Wright allegedly used, indicating the house was Stroman's, as well as his actions in discontinuing offsets from Stroman's paychecks, are clearly suggestive of an intention to bestow a present gift.

Moreover, the fact that Wright may have included 105 Sweeney Street in a subsequent will does not necessarily negate the evidence that Wright had already gifted equitable title to that property to Stroman. In *Dickson v. Dickson*, 993

11

S.W.2d 735, 740 (Tex. App.—Houston [14th Dist.] 1999, no pet.), we held that a gift of land obtained by a parol gift would not be passed by will. A will only speaks at the time of the testator's death, and the estate's property cannot be assessed until that date. The will can only give things possessed by the testator at his death. *Id.* at 740; s*ee also Shriner's Hosp. for Crippled Children of Tex. v. Stahl*, 610 S.W.2d 147, 150 (Tex. 1980).

Equitable title indicates a beneficial interest in property and entitles the holder to formal legal title. *Longoria v. Lasater*, 292 S.W.3d 156, 165 (Tex. App.—San Antonio 2009, pet. denied) (citing Black's Law Dictionary at 1523 (8th ed. 2004)). Ownership of the equitable estate is the real ownership; the legal estate is no more than the "shadow following the equitable estate." *Patty v. Middleton*, 82 Tex. 586, 17 S.W. 909, 912 (Tex. 1891); *Smith v. Sumeer Homes, Inc.*, No. 05-11-01632-CV, 2013 WL 2467252, at *3 (Tex. App.—Dallas June 6, 2013, pet. denied) (mem. op.); *Neeley v. Intercity Mgmt. Corp.*, 623 S.W.2d 942, 951 (Tex. App.—Houston [1st Dist.] 1981, no writ). Viewing the evidence in the light most favorable to the trial court's finding, as we must, there was more than a scintilla of evidence to support the finding that Wright intended to make a present gift to Stroman of equitable title to 105 Sweeney Street despite apparently also indicating that he would make provision in his will for the legal title in the property to be put in Stroman's name. *See Troxel*, 201 S.W.3d at 299-300 (holding donee received equitable title to house based on oral gift even if deed did not effectively convey title to donee).

There was clear testimony that Wright bought the property with the intention of at some point giving or conveying it to Stroman; Stroman paid Wright on the property for a couple of years or more; and then Wright told Stroman that was

12

enough, the property was Stroman's.[7] Additionally, there was evidence that after Wright made that pronouncement, the insurance on the property was switched to Stroman's name and Stroman paid the premiums. Further, when mold remediation work was performed on the house, the insurance company reportedly dealt only with Stroman and made checks out to Stroman and the contractor.

Any conflict or inconsistency in the evidence created by the mention of Wright's will was for the judge to resolve as fact-finder.[8] *See City of Keller*, 168 S.W.3d at 820; *Allstar Nat. Ins. Agency v. Johnson*, No. 01-09-00322-CV, 2010 WL 2991058, at *5 (Tex. App.—Houston [1st Dist.] July 29, 2010, no pet.) (mem. op.); *cf. Whitten v. Dethloff*, 214 S.W.2d 480, 483-85 (Tex. Civ. App.—Fort Worth 1948, no writ) (holding evidence was sufficient to support verdict of oral gift of real estate, and it was jury's function to resolve conflicting evidence, where same property was left in decedent's will to other parties). We will not substitute our judgment for that of the trial court. *See City of Keller*, 168 S.W.3d at 822; *Allstar Nat. Ins.*, 2010 WL 2991058, at *5.[9] Because there was more than a scintilla of evidence to support the trial court's present gift finding, we overrule Tautenhahn's second issue. *See BMC Software*, 83 S.W.3d at 795.[10]

---

[7] The dissent quotes additional trial testimony, some of which was excluded when the judge sustained an objection to its admissibility.

[8] Similarly, the trial court as fact-finder could have simply disbelieved Tautenhahn's statements that Wright decided to evict Stroman from the property or that Wright refused to give Stroman a deed because Wright felt Stroman was unappreciative. *See, e.g., White Oak Operating Co., LLC v. BLR Const. Cos., LLC*, 362 S.W.3d 725, 735 (Tex. App.—Houston [14th Dist.] 2011, no pet.).

[9] Tautenhahn testified that Stroman requested a deed to the property while Wright was still alive; this suggests Stroman viewed it as something of a legal technicality. We further note that we do not know specifically what the unproduced will said about 105 Sweeney Street; it may have reflected a gift had already been made and legal title just needed to be transferred. The will that was admitted to probate does not name 105 Sweeney Street, but simply bequeathed half of Wright's estate to Tautenhahn and half to Bozeman.

[10] Because Tautenhahn does not challenge the sufficiency of the evidence concerning the

13

### *Attorney's Fees*

The trial court awarded Stroman attorney's fees based on his good faith presentation of an alleged will for probate as permitted under former section 243 of the Texas Probate Code.[11] In his third issue, Tautenhahn contends that the trial court erred in awarding Stroman attorney's fees because former section 243 does not mandate an award of fees under these circumstances, Stroman failed to include a request for attorney's fees in his live pleadings, and the issue was not tried by consent. The availability of attorney's fees under a particular statute is a question of law for the court. *Holland v. Wal-Mart Stores, Inc.*, 1 S.W.3d 91, 94 (Tex. 1999).

Former section 243 permitted but did not require an award of attorney's fees to a devisee, legatee, or beneficiary of an alleged will for the good faith defense of the will or prosecution of an attempt to admit the will to probate, whether or not the will in question was found to be valid. *In re Estate of Washington*, 289 S.W.3d 362, 368 (Tex. App.—Texarkana 2009, pet. denied); *Zapalac v. Cain*, 39 S.W.3d 414, 420 (Tex. App.—Houston [1st Dist.] 2001, no pet.).[12] Tautenhahn is

---

other two elements required to prove a parol gift of real estate, we do not discuss the evidence as it pertains to those elements.

[11] Former section 243 of the Probate Code, which was in effect when this case was filed, was repealed (along with the entire Probate Code) by the legislature, and former section 243 was recodified as section 352.052 of the Texas Estates Code without any substantive modification. *See* Act of May 26, 2009, 81st Leg., R.S., ch. 680, §§ 1, 10–12, 2009 Tex. Gen. Laws 1512, 1650, 1731–32 (effective Jan. 1, 2014) (current version at Tex. Est. Code § 352.052).

[12] As applicable to this appeal, former section 243(b) stated:

When any person designated as a devisee, legatee, or beneficiary in a will or an alleged will . . . defends it or prosecutes any proceeding in good faith, and with just cause, for the purpose of having the will or alleged will admitted to probate, whether successful or not, he **may** be allowed out of the estate his necessary expenses and disbursements, including reasonable attorney's fees, in such proceedings.

(Emphasis added.)

therefore correct that former section 243 did not require the court to award fees and, therefore, such award must be supported by proper pleadings or tried by consent. *See In re Estate of Gaines*, 262 S.W.3d 50, 60 (Tex. App.—Houston [14th Dist.] 2008, no pet.) ("Absent a mandatory statute, a trial court's jurisdiction to render a judgment for attorney's fees must be invoked by pleadings, and a judgment not supported by pleadings requesting an award of attorney's fees is a nullity.").

We next turn to the question of whether Stroman requested attorney's fees in his pleadings. None of Stroman's live pleadings at the time of trial contained a request for attorney's fees. Although he did request fees in his Amended Application to Set Aside Order Probating Will, filed on September 20, 2012, he again amended that pleading on November 19, 2012, dropping any mention of, much less a request for, attorney's fees. *See Scruggs v. Linn*, 443 S.W.3d 373, 382 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (explaining that an amended petition completely replaces and supersedes a prior petition).

At the conclusion of trial when Stroman's attorney called herself as a witness on attorney's fees as a proponent of a will, Tautenhahn's counsel objected on the ground that Stroman had no pleadings on file for such relief. The trial judge then stated that he was going to allow the testimony "just to get it of record" and would later determine whether Stroman was entitled to attorney's fees. The judge allowed Tautenhahn's counsel whatever time he needed to review Stroman's counsel's fees affidavit and then cross-examine her, which he did.

The judge also invited Stroman's counsel "to submit . . . case law or something to clarify what you think is your entitlement" to attorney's fees. Stroman thereafter filed his "Authority for Attorney's Fees," in which he insisted that he was entitled to fees as a will proponent under former section 243 and

15

"should be awarded fees."[13]   Additionally, Stroman filed a motion for entry of judgment, seeking entry of an attached proposed judgment that included an award of attorney's fees expressly based on former section 243.   In the final judgment, the trial court awarded Stroman attorney's fees to be paid by the estate of $57,179.15.  A number of courts have held under similar circumstances that a post-trial, pre-judgment filing with the court that requests attorney's fees can serve as a trial amendment satisfying the need for pleading for attorney's fees unless the opposing party presents evidence of surprise or the document asserts a new cause of action.  *See Nisby v. Dentsply Int'l, Inc.*, No. 05-14-00814-CV, 2015 WL 2196627, at *1 (Tex. App.—Dallas May 11, 2015, no pet.) (mem. op.) (holding post-verdict motion to enter final judgment that specifically requested attorney's fees was sufficient pleading to support award of fees); *Good v. Baker*, 339 S.W.3d 260, 267 (Tex. App.—Texarkana 2011, pet. denied) (holding post-trial, pre-judgment motion for attorney's fees based on permissive statute was a trial amendment supporting award of fees); *Swate v. Medina Cmty. Hosp.*, 966 S.W.2d 693, 701-02 (Tex. App.—San Antonio 1998, pet. denied) (holding post-verdict, pre-judgment motion for fees effectively served as trial amendment supporting award of fees); *Candelier v. Ringstaff*, 786 S.W.2d 41, 43-44 (Tex. App.—Beaumont 1990, writ denied) (holding trial court did not err in awarding fees under former section 243 based on request for fees in post-trial amended pleading).[14]

---

[13] Although not labelled as such, the Authority for Attorney's Fees was in essence a motion for attorney's fees.  *Cf. Good v. Baker*, 339 S.W.3d 260, 267 & n.9 (Tex. App.—Texarkana 2011, pet. denied) (holding motion for attorney's fees filed three months after jury verdict was a claim for affirmative relief and thus constituted a written pleading supporting attorney's fees award).  In determining whether a filing is an affirmative claim for relief, we look to the facts alleged and not the title or the form of the prayer for relief.  *See, e.g., id.*

[14] Tautenhahn cites our prior unpublished opinion in *Stewart A. Feldman & Associates, L.L.P. v. Industrial Photographic Supply, Inc.*, in support of his position that Stroman did not properly plead for attorney's fees.  No. 14-01-00249-CV, 2002 WL 31042586 (Tex. App.—Houston [14th Dist.] Sept. 12, 2002, no pet.) (mem. op., not designated for publication).  To

In the present case, even though his live pleadings at the time of trial did not contain such a request, Stroman had requested attorney's fees in previous pleadings, he requested and put on evidence regarding attorney's fees at the conclusion of trial, and he filed his Authority for Attorney's Fees and motion for entry of judgment prior to the entry of final judgment. Tautenhahn does not argue surprise on appeal or cite to any evidence suggesting that he was surprised by such a request. In fact, the trial court gave Tautenhahn an opportunity to review Stroman's counsel's affidavit and cross-examine her on the issue at the end of the trial. Under these specific circumstances, we hold that the trial court's award of attorney's fees was supported by pleadings. Accordingly, we overrule Tautenhahn's third issue.

Having overruled each of Tautenhahn's issues, we affirm the trial court's judgment.


/s/    Martha Hill Jamison
       Justice

Panel consists of Chief Justice Frost and Justices Jamison and Busby (Frost, C.J., dissenting).

---

begin with, as a pre-2003 unpublished opinion, *Stewart A. Feldman & Associates* has no precedential value. *See* Tex. R. App. P. 47.7(b); *Alcala–Garcia v. City of La Marque*, No. 14–12–00175, 2012 WL 5378118, at *7 (Tex. App.—Houston [14th Dist.] Nov. 1, 2012, no pet.) (mem. op.). Moreover, the facts in that case are readily distinguishable from the present circumstances because the motion at issue in *Stewart A. Feldman & Associates* "set[] out no facts or legal basis to support an award of attorney's fees," whereas Stroman's Authority for Attorney's Fees discusses both facts and law in some detail. 2002 WL 31042586, at *6-7. Additionally, the court in *Stewart A. Feldman & Associates* noted that the motion therein was not filed until "long after" the trial court had determined the issues in the case. *Id.* at *7. Here, the trial court had expressly reserved a ruling regarding attorney's fees and invited the filing of additional material prior to its final ruling.