*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| DANIEL DIXON, | ) | |
| | ) | Supreme Court No. S-16182 |
| Appellant, | ) | |
| | ) | Superior Court No. 1KE-15-00056 CI |
| v. | ) | |
| | ) | O P I N I O N |
| CAROLYN DIXON, | ) | |
| | ) | No. 7207 – October 20, 2017 |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, First Judicial District, Ketchikan, William B. Carey, Judge.

Appearances: David S. Katz, Anchorage, for Appellant. Leif Thompson, Leif Thompson Law Office, Ketchikan, for Appellee.

Before: Stowers, Chief Justice, Winfree, Maassen, Bolger, and Carney, Justices.

MAASSEN, Justice.

## I. INTRODUCTION

A mother and son dispute ownership of a house in Ketchikan. The son contends that his mother gave him the property following her husband's death, and that he spent years repairing and renovating it on the understanding that it was his. His mother argues that she still owns it. She contends that she agreed to transfer title only if her son repaired the property and paid off the mortgage, which he failed to do.

Following a bench trial on the son's quiet title claim, the superior court found that he failed to prove his mother's intent to transfer the property. Because the superior court properly applied the relevant legal doctrines and did not clearly err in its findings of fact, we affirm its judgment.

## II. FACTS AND PROCEEDINGS

### A. Facts

In 1982 David Dixon purchased a one-bedroom house on Warren Street in Ketchikan. In 1998 he conveyed the property by quitclaim deed to himself and his wife, Carolyn Dixon. Carolyn testified at trial that the couple lived in the Warren Street house until 2002; thereafter David continued using it as a workshop and art studio.

David died in 2005, and Carolyn had little interest in dealing with the Warren Street property. Her son Dan Dixon proposed that she refinance the house — encumbered by an approximately $30,000 mortgage — and offered to renovate it. According to Carolyn, Dan "was supposed to fix [the house] up and rent it and . . . pay the mortgage, pay any expenses that came up, and then keep the rest of the money." Dan testified that "the goal was [to] get [the house] refinanced in [his] name" and "get [Carolyn's] name off the mortgage"; he would then pay Carolyn back whatever she had to lend him to make this happen.

Carolyn signed a quitclaim deed on December 16, 2007. The deed says that she "convey[ed] and quitclaim[ed]" her interest in the Warren Street house to Austin Dixon, Dan's son. According to Dan, Carolyn named Austin as the grantee at Dan's request; Dan "wanted [the house] to be for [his] son," but he was also concerned about "IRS issues" if the house was deeded to him. He testified, though, that he was sure Carolyn would have made out the deed in his name if he had asked her to.

The quitclaim deed was not notarized or formally witnessed. Carolyn gave it to Dan, but neither he nor Austin recorded it. Carolyn testified at trial that she did not believe the deed could effectively transfer her interest in the house until the mortgage had been paid off.

In 2008 Carolyn refinanced the Warren Street property. She used the money from the refinance to pay off the first mortgage; she also added $33,000 of the proceeds to a shared checking account Dan could access for house-related expenses, including mortgage payments. Dan eventually depleted the account, apparently mostly on repairs to the house, though some of the money may have gone toward his dental bills and other unrelated debt. Between 2007 and 2014 Carolyn made ten of the mortgage payments, at Dan's request; Dan apparently made the rest of the payments out of the shared account.

Between 2008 and 2010 Dan made a number of repairs and renovations to the house, including plumbing and electrical work, reframing and foundation work, floor refinishing, repainting, and remodeling the kitchen and bathroom. He claimed he paid for the work with a combination of the refinance money from Carolyn and his own money. At trial he was unable to give any accounting of these expenses, and he could not distinguish between what he paid for with his own money and what he paid for with money from Carolyn.

Dan lived in the house with his son for about a year in 2010. Starting in 2011 he rented it out for the summer season. Between 2011 and 2014 he found three different tenants and brought in approximately $17,000 in rental income.

In spring 2014 Carolyn's insurance company informed her that the policy on the Warren Street house had to be rewritten to reflect that the property was no longer owner-occupied. Carolyn asked for a landlord policy instead but was informed that the

house would need to be rewired before it could be insured at all. Around this time Carolyn also learned that the utilities were about to be cut off because the bill had not been paid, and she received notice from the mortgage company that the checking account she shared with Dan was overdrawn and would not cover the monthly mortgage payment. Carolyn emailed Dan in May 2014, telling him that she had closed the shared bank account and her account with the utility company. She also informed Dan that she had written the mortgage company to let it know he would be handling the mortgage from then on. When Dan failed to respond she resent the email a week later, following up with a handwritten note on the June mortgage statement. In both the handwritten note and the email, Carolyn wrote, "The house is yours."

But Dan was in Seattle for the summer, and he made no further mortgage payments. And though he apparently planned to rewire the house himself in September, the insurance company informed Carolyn that it had to be done by late July in order to preserve coverage. Carolyn "realized [she] had to take . . . the house over" to address the wiring issue and to pick up the mortgage payments. After the rewiring was done she had her son Bruce and his daughter Amanda remove Dan's belongings, board up the house, and change the locks.

But Dan managed to get back inside. Carolyn eventually sought police assistance to remove him, and in October 2014 she obtained a 20-day restraining order to keep him away from the house.

## B. Proceedings

In February 2015, after repeated calls to the police about Dan's alleged trespass on the Warren Street property, Carolyn filed a complaint to recover the house from him and in March sought a writ of assistance, which was granted. Dan filed an

answer to Carolyn's complaint and counterclaimed "[f]or a judgment quieting title to the Warren Street house in [Dan]."

The superior court held a three-day bench trial on the quiet title issue. The court found that Dan failed to prove by clear and convincing evidence that Carolyn had given him the property, and it dismissed Dan's counterclaim. Dan filed a motion for reconsideration, but the court denied it, explaining that "overwhelming circumstantial evidence" demonstrated Carolyn's intent to transfer ownership of the property to Dan "only upon the fulfillment" of certain conditions, which Dan had failed to satisfy.

Dan appeals.

## III.    STANDARDS OF REVIEW

"We review the trial court's findings of fact under the 'clearly erroneous' standard"[1] and "will reject a factual finding only if we are 'left with the definite and firm conviction on the entire record that a mistake has been committed.' "[2] "[W]hen a trial court's decision of a factual issue depends largely on conflicting oral testimony, the trial court's competence to judge credibility of witnesses provides even a stronger basis for deference by the reviewing court."[3]

---

[1]    *Vezey v. Green*, 35 P.3d 14, 19-20 (Alaska 2001) (quoting *Peters v. Juneau Douglas Girl Scout Council*, 519 P.2d 826, 833 (Alaska 1974)).

[2]    *Id.* at 20 (quoting *Alaska Foods, Inc. v. Am. Mfrs. Mut. Ins. Co.*, 482 P.2d 842, 848 (Alaska 1971)).

[3]    *Id.* (quoting *Tenala, Ltd. v. Fowler*, 921 P.2d 1114, 1118 n.5 (Alaska 1996)).

"We use our independent judgment in reviewing the trial court's legal analysis."[4] In evaluating legal questions, we adopt "the rule of law that is most persuasive in light of precedent, reason, and policy."[5]

## IV. DISCUSSION

In support of his contention that Carolyn gave him the Warren Street property, Dan's primary argument is that she memorialized the gift in 2007 by preparing and signing the quitclaim deed. Dan argues in the alternative that his claim fits an exception to the statute of frauds for parol gifts of land.

### A. The Superior Court Did Not Err In Rejecting The 2007 Quitclaim Deed As Proof Of A Transfer To Dan.

Dan argues that the 2007 quitclaim deed, though lacking necessary formalities,[6] nonetheless proves Carolyn's intent that the Warren Street house belong to him. The lack of notarization and recording, he argues, is not fatal because case law holds that an unacknowledged or unrecorded deed may still be valid as between the parties to the deed.[7] Dan further contends that the deed's naming of Austin as the grantee made it ambiguous, and that the deed must therefore be reformed to recognize

---

[4] *Id.* (citing *Walsh v. Emerick*, 611 P.2d 28, 30 (Alaska 1980)).

[5] *Id.* (quoting *Guin v. Ha*, 591 P.2d 1281, 1284 n.6 (Alaska 1979)).

[6] AS 09.25.010(b) requires that a transfer of an interest in real property be conveyed in a writing "subscribed by the party . . . transferring [the interest] . . . and executed with the formalities that are required by law." And AS 34.15.040 states that a quitclaim deed conveys the grantor's interest in property "when . . . duly executed." *See also* AS 34.15.010.

[7] *Smalley v. Juneau Clinic Bldg. Corp.*, 493 P.2d 1296, 1301(Alaska 1972); *see also Maddox v. Hardy*, 187 P.3d 486, 492 (Alaska 2008) (An "unacknowledged deed is only valid 'as between the parties.' " (quoting *Smalley*, 493 P.2d at 1301)).

that Dan was the intended grantee.  Based on these arguments, he claims that the superior court erred in treating the deed as a "legal nullity."

But the superior court did not err in concluding that the quitclaim deed did not validly convey title to Dan.  To interpret a deed a court "first look[s] to the four corners of the document to determine the parties' intent.  If the deed is open to only one reasonable interpretation, [the court's] analysis ends there."[8]  "Only if the deed is ambiguous" will the court take steps to interpret it.[9]  The "four corners" of the 2007 document do not contain an ambiguity.[10]  The document unambiguously identifies the grantor (Carolyn), the grantee (Austin), the property at issue, the consideration, and the date; it makes no mention of Dan.

Dan argues that Austin's name was used on the deed "as a pseudonym for [Dan]," but if that is so, it is not evident from the document itself.  And while deeds made out to grantees under assumed names are not unlawful, the grantee must be "so designated and described as to distinguish him [or her] from the rest of the world."[11]  The

---

[8]      *Offshore Systems-Kenai v. State, Dep't of Transp. & Pub. Facilities*, 282 P.3d 348, 354 (Alaska 2012) (citing *Dias v. State, Dep't of Transp. & Pub. Facilities*, 240 P.3d 272, 274 (Alaska 2010)).

[9]      *Id.* at 355-56.  *Cf. Fink v. Municipality of Anchorage*, 379 P.3d 183, 191 (Alaska 2016) (finding deed ambiguous where it failed to note the location of important natural landmarks in relation to the lot boundaries, when an earthquake had caused the natural landmarks to shift).

[10]      "Ambiguous" means "capable of being understood in two or more possible senses or ways."  MERRIAM-WEBSTER.COM, https://ww.merriam-webster.com/dictionary/ambiguous (last visited Aug. 29, 2017).

[11]      *Roeckl v. Fed. Deposit Ins. Corp.*, 885 P.2d 1067, 1071 (Alaska 1994) (alteration in original) (quoting 6 GEORGE W. THOMPSON, COMMENTARIES ON THE
(continued...)

use of another person's real name does not satisfy that standard, especially when that other person is known to both parties. As the superior court aptly noted, "I don't see how you can get around the fact that [the document quitclaimed the property] to Austin," not to Dan.[12]

The evidence also supports the superior court's refusal to reform the deed to accommodate Dan's claim of ownership. "Reformation of a writing is justified when the parties have come to a complete mutual understanding of all the essential terms of their bargain, but by reason of mutual mistake . . . the written agreement is not in conformity with such understanding."[13] The "party urging reformation must establish the elements of reformation by clear and convincing evidence."[14] Here, the evidence failed to support Dan's claim that he and Carolyn had "come to a complete mutual understanding of all the essential terms of their bargain," as we discuss below. And Dan testified that the deed names Austin as the grantee *at Dan's own request*, in part to avoid tax consequences; there is no evidence of a mutual mistake.

We conclude that the superior court did not err when it rejected the 2007 quitclaim deed as persuasive evidence that Carolyn intended to give the property to Dan.

---

[11](...continued)
MODERN LAW OF REAL PROPERTY § 3006, at 349 (John S. Grimes repl. ed. 1962)).

[12]     We are not asked to decide whether the quitclaim deed was valid as to Austin, and we have not considered the issue.

[13]     *AAA Valley Gravel, Inc. v. Totaro*, 219 P.3d 153, 164-65 (Alaska 2009) (alteration in original) (emphasis omitted) (quoting *Groff v. Kohler*, 922 P.2d 870, 873 (Alaska 1996)).

[14]     *Id.* (quoting *Wasser & Winters Co. v. Ritchie Bros. Auctioneers*, 185 P.3d 73, 82 (Alaska 2008)).

**B.     The Superior Court Did Not Err In Finding There Was No Parol Gift Of Land.**

Alaska's statute of frauds generally requires that a transfer of land be memorialized in a writing in order to be enforceable,[15] but the rule has its exceptions.[16] In *Vezey v. Green* we considered claims of adverse possession, noting that the elements of hostility and notoriety may be presumed when the claim is based on a gift from the record owner.[17] As an aside we noted that in addition to adverse possession, "some states have adopted an alternate theory to support parol gift donees' claims to real property": under this theory a donee "may establish ownership despite the statute of frauds" by proving "(1) the donor's intent to make a gift and (2) [the donee's] own reliance on the gift in making valuable improvements to the property."[18]  But we did not consider this theory any further in *Vezey* because it "was not argued by either party or considered by the superior court."[19]

Dan asks us to apply this theory of recovery to the facts of this case.  But as in *Vezey* it is again unnecessary for us to adopt the theory, since even if we did its elements would not be satisfied here.  As usually formulated, the theory requires a donee

---

[15]     AS 09.25.010.

[16]     AS 09.25.020.

[17]     35 P.3d 14, 24 (Alaska 2001).

[18]     *Id.* at 24 n.35 (citing *Locke v. Pyle*, 349 So. 2d 813, 815 (Fla. 1977); *Gran v. Gran*, 290 N.W. 241, 242-43 (N.D. 1940); *Holohan v. McCarthy*, 281 P. 178, 181 (Or. 1929); *Adams v. Adams*, 205 S.W.2d 801, 802 (Tex. 1947); *Kelly v. Crawford*, 88 N.W. 296, 299 (Wis. 1901)).

[19]     *Id.*

to prove three elements by clear and convincing evidence.[20] First, the donee must show that the donor made a present gift of land, meaning that "the donor must, at the time [s]he makes [the gift], intend an immediate divestiture of the rights of ownership out of [her]self and a consequent immediate vesting of such rights in the donee."[21] Second, the donee must show that he took the land believing it was a gift.[22] Third, the donee must have made permanent and valuable improvements to the land in reliance on the gift.[23]

The superior court, in evaluating whether Dan had proven a parol gift, relied on Alaska promissory estoppel cases[24] as well as an Arkansas case, *Hendrix v.*

---

[20] *See, e.g.*, *Hendrix v. Hendrix*, 506 S.W.2d 848, 852 (Ark. 1974); *Gran*, 290 N.W. at 243; *Conradi v. Perkins*, 941 P.2d 1083, 1085 (Or. 1997); *Estate of Wright*, 482 S.W.3d 650, 657 (Tex. App. 2015); *see also Vezey*, 35 P.3d at 24 (implying that a parol gift of land must be proven by clear and convincing evidence).

[21] *Estate of Wright*, 482 S.W.3d at 657; *Adams*, 205 S.W.2d at 802, *cited in Vezey*, 35 P.3d at 24 n.35; *see also Roberson v. Manning*, 268 P.3d 1090, 1094 (Alaska 2012) (requiring, when evaluating whether a party made a gift of a mobile home, that the alleged donor's "donative intent . . . be clear, unmistakable, and unequivocal").

[22] *Locke*, 349 So. 2d at 815 (citing *Green v. Price*, 63 So. 2d 337 (Fla. 1953)); *Gran*, 290 N.W. at 243; *Holohan*, 281 P. at 181; *Estate of Wright*, 482 S.W.3d at 657; *Adams*, 205 S.W.2d at 802.

[23] *Locke*, 349 So. 2d at 815; *Gran*, 290 N.W. at 243 ("[W]here in reliance upon a parol gift of real property the donee takes possession and makes improvements so it would work a substantial injustice to hold the gift void, the gift is good and the statute of frauds . . . cannot be invoked to defeat it." (citing *Heuer v. Heuer*, 253 N.W. 856 (N.D. 1934))); *Conradi*, 941 P.2d at 1085 (citing *Thayer v. Thayer*, 138 P. 478 (Or. 1914); *Luckey v. Deatsman*, 343 P.2d 723 (Or. 1959)); *Holohan*, 281 P. at 181; *Estate of Wright*, 482 S.W.3d at 657.

[24] *Kiernan v. Creech*, 268 P.3d 312, 315-19 (Alaska 2012) (holding that the evidence could support application of promissory estoppel exception to statute of frauds based on claimant's partial payment of costs involved in purchasing commercial towing

(continued...)

*Hendrix*, which laid out the elements of a parol gift claim as described above.[25] The court found that Dan failed to prove the first element: that Carolyn intended to make a "present gift" of the Warren Street property.[26] The court found instead that although Carolyn intended to give the house to Dan, certain "things had to happen" first.

Dan argues that the superior court mistakenly required that he "prove [that] the precise terms of the gift were clear and unambiguous"; he notes that a gift need not include all the terms necessary to a contract, such as price and duration. But although the superior court did allude to "the terms of the gift," it decided the case on the ground that Dan failed to prove Carolyn's intent to make a present gift of the property; it found that Dan did not show "clear[ly] and unambiguous[ly] . . . that this was intended as a gift." In our view, the court was appropriately focused on Carolyn's intent.

We further conclude that the superior court did not err in its factual finding

---

**24**(...continued)
lot, performance of improvements, and payment of half the monthly mortgage and utility costs, where defendant claimed that claimant was a renter rather than a co-owner); *Valdez Fisheries Dev. Ass'n v. Alyeska Pipeline Serv. Co.*, 45 P.3d 657, 668 (Alaska 2002) (holding that a letter was too indefinite to constitute a "promise" for purposes of promissory estoppel); *Alaska Democratic Party v. Rice*, 934 P.2d 1313, 1316-17 (Alaska 1997) (affirming jury finding of promissory estoppel based on former employee's substantial change in position in reliance on employer's promise).

**25**      *Hendrix*, 506 S.W.2d at 852.

**26**      *See Estate of Wright*, 482 S.W.3d at 657 ("[T]he donor must, at the time he makes [the gift], intend an immediate divestiture of the rights of ownership out of himself and a consequent immediate vesting of such rights in the donee."); *see also Roberson*, 268 P.3d at 1094 ("The superior court must . . . determine if [the alleged donor] had the necessary donative intent to make a gift of his share of the mobile home to [the alleged donee], rather than a mere promise to make a gift in the future."); 38 AM. JUR. 2D GIFTS § 18 ("A promise to make a gift in the future is not a gift, and it is revocable at any time until the gift is executed.").

about what Carolyn intended. The primary evidence on which Dan relied to prove her intent to make an unconditional, present gift of the property — the 2007 quitclaim deed — is at best weak support for his claim; as explained above, the deed does not even mention Dan, and it was never formally acknowledged or recorded. And the superior court could reasonably reject Dan's argument that Carolyn "repeat[ed] the gift" in the email and handwritten note from May 2014 when she stated, "The house is yours." The notes are in the context of the unpaid mortgage and utility bills, which both parties agree Dan was supposed to be paying. The court could reasonably conclude that Carolyn's statements were intended to emphasize that the house was Dan's responsibility, not that it had already transferred to his ownership. Carolyn testified consistently that "it was [her] intention that [Dan] would have [the house] when the mortgage was paid off," and the superior court found her "much more credible" on this subject than Dan. She testified that even when drafting the 2007 quitclaim deed she did not intend an immediate divestiture of her ownership interest, because she believed she could not legally transfer it "until the mortgage was paid off." We conclude that the superior court did not clearly err in finding there was no "immediate divestiture" of Carolyn's rights to the house, no "consequent immediate vesting" of ownership rights in Dan, and therefore no parol gift.[27]

Nor did the superior court clearly err in concluding that Dan made improvements to the property in reliance on a "conditional agreement" rather than a completed gift. Dan testified about significant improvements he made to the property even before 2007, when he claims the gift was made. The superior court could reasonably conclude from this that Dan did not make improvements to the house solely

---

[27]     *See Estate of Wright*, 482 S.W.3d at 657.

because he believed it was his.[28] And again we defer to the superior court's assessment that Carolyn's characterization of the agreement was "much more credible and reasonable" than Dan's.

We therefore affirm the superior court's judgment that Dan failed to prove a parol gift of land that would warrant quieting title to the Warren Street house in him. We further conclude that the superior court did not clearly err in declining to find that Dan was entitled to the house under another equitable theory.[29]

---

[28]     *See Pocius v. Fleck*, 150 N.E.2d 106, 111 (Ill. 1958) (finding no oral contract when plaintiff performed services before promise was allegedly made).

[29]     Dan briefly argues that he is entitled to specific performance under the doctrine of promissory estoppel. But that doctrine first requires "[a]n actual promise" that is " 'definitive, . . . very clear, . . . and must use precise language.' " *Sea Hawk Seafoods, Inc. v. City of Valdez*, 282 P.3d 359, 366 (Alaska 2012) (quoting *Safar v. Wells Fargo Bank, N.A.*, 254 P.3d 1112, 1119 (Alaska 2011)). The superior court concluded that Dan did not meet his burden to prove an "actual promise," and Dan concedes this point in his appellant's brief; he argues that there was no definite agreement between him and Carolyn and therefore no way he could be found to have failed to fulfill his part of the bargain.

We recognize the parallels between promissory estoppel and the parol gift theory of recovery; some courts treat them as derivative doctrines. *See Aiello v. Knoll Golf Club*, 165 A.2d 531, 535 (N.J. App. 1960) ("[E]quitable relief [from the Statute of Frauds] is based upon the reliance of the transferee on the representations of the promisor — a form of promissory estoppel — rather than on the theory that part performance is a substitute for the written evidence required by the Statute of Frauds."); *Montoya v. N. M. Human Servs. Dep't, Income Support Div.*, 771 P.2d 196, 199 (N.M. App. 1989) ("The same equitable rules, including promissory estoppel, protect oral gifts as well as oral contracts for the sale of land."). We analyzed Dan's claim as a parol gift of land because that is the way he presented it; as explained above, however, the result would be the same applying principles of promissory estoppel.

## V.     CONCLUSION

We AFFIRM the superior court's dismissal of Dan's counterclaim to quiet title.